FREDERICK S. BRITTON, ASSIGNEE OF GEORGE SCHEUCH *v.* CHARLES LORENZ, THOMAS CROFTS, AND FRANCIS HOFF-BAUER.

In an action by a general assignee, under the statute (Laws of 1858, chap. 314, Laws of 1860, chap. 348), it is competent for the plaintiff to show that a bill of sale transferring the whole of the debtor's property, to recover which the action is brought, though absolute on its face, was in reality intended to operate as a general assignment for the benefit of creditors with preferences.

The statute is imperative, that every assignment of a debtor's property made to an assignee in trust for creditors, shall be in writing, and duly acknowledged before its delivery to the assignee; and every attempt to create such a trust by another and different mode from that prescribed by the statute, is absolutely void, and no title will pass.

A bill of sale, absolute on its face, is conclusive only as between the parties to it. It may be impeached by third parties, and declared void upon the ground of fraud, or for the reason that it was given for a purpose different from what appears on its face, when the purpose is one that cannot be lawfully effected in that way.

The rule which precludes a professional adviser from disclosing what occurred between himself and his client, was intended for the client's benefit, and the latter consenting, such evidence is admissible.

Testimony as to what occurred between an insolvent debtor and one of his creditors, to whom the former was about to make a bill of sale, but before its execution, as to what it was best for the insolvent to do, is admissible as part of the *res gestæ.*

APPEAL from a judgment of this court, entered upon a decision of Judge Brady, without a jury.

This action was brought by the plaintiff, as general assignee of George Scheuch, an insolvent under the act of 1860, to recover certain property, which had been conveyed to the defendants by a bill of sale. On the 3d of April, 1865, George Scheuch, a merchant, doing business at No. 1 Park place, was indebted to various persons for borrowed money and goods sold. The defendants, partners under the name of Lorenz, Crofts & Co., were his largest creditors.

· About the 2d of April, Scheuch found himself pecuniarily embarrassed, and advised with his brother, who undertook to consult with the defendants, because of the friendship which had existed, and the large indebtedness to them. He told Mr. Lorenz, after showing to him the nature of his brother's indebtedness, and the amount of his assets, that he had advised him to pay his confidentials, and after that the balance of his creditors, as far as he could, and this was assented to by Mr. Lorenz as the proper course to be pursued, and, on the following day, George Scheuch and defendants were brought together by Scheuch's brother, to carry out the suggestion.

It was then proposed by Mr. Lorenz that Scheuch should make a bill of sale to the defendants of all his property, the borrowed money owing to be paid in full, the goods not to be removed, and in two or three days it was believed a settlement could be effected by defendants with all of the creditors.

Mr. Scheuch and Mr. Crofts went to the office of Mr. Dickinson, an attorney. The settlement to be effected with the creditors was discussed, and directions were given to draw a bill of sale. No agreement was made as to the value of the property, but Mr. Crofts suggested that the consideration to be inserted should be $15,000. Scheuch had occasion to leave the office for a few moments, and the consideration was altered to $10,000, in order to save five dollars of stamp duty. At the same time, Mr. Scheuch delivered to defendants a check for $500, and assigned the lease of his store. The defendants now allege, by answer, that this was intended as an absolute sale of all Scheuch's property to them for $10,000. A general assignment was made, in compliance with the act of 1860, to the plaintiff.

The court, upon the trial, found, amongst others, as matters of fact,

"That the consideration expressed on the face of said alleged bill of sale was $10,000, but that such alleged consideration was nominal, and that there was no consideration whatever paid therefor, nor for said check.

"That said bill of sale was made and executed by said Scheuch, and said check delivered, and said lease transferred,

to the defendants in trust, to convert the said goods and other property, into money, and to collect the debts due said Scheuch, and out of the proceeds thereof, first, to pay the debts of the said Scheuch, which he owed for borrowed money; and second, to distribute the balance thereof *pro rata* among all the creditors of said Scheuch, and that defendants accepted said trust.

"That said bill of sale so made in trust as aforesaid, was not before the delivery thereof to the defendants, nor has it been at any time since, acknowledged, in any manner, before any officer or other person authorized to take the acknowledgment of deeds; nor was any certificate of such acknowledgment, in any manner, endorsed upon said assignment or bill of sale at any time.

" That under color of said assignment or bill of sale, the defendants herein took possession of said goods and other property covered thereby, and removed the same to their own store, and have converted the same to their own use.

" That the defendants have refused, in any manner, to carry out the trusts upon which said bill of sale was given.

" That the plaintiff duly became the assignee, in trust for the creditors, of George Scheuch, by virtue of an assignment bearing date April 8th, 1865; and thereupon undertook to execute the trusts under said assignment.

" That the plaintiff, as such assignee, before the commencement of this action, demanded from the defendants the delivery of the said property, &c."

Upon the foregoing facts, the court found and decided as matters of law :

" That the instrument executed by the said George Scheuch to the defendants herein, on the 3d day of April, 1865, purporting to be a bill of sale, and the transfer of the check and lease aforesaid, was in trust to defendants, to convert the property and choses in action in said bill of sale referred to, and also said check and lease, into money, and out of the proceeds thereof to pay, first, the debts said Scheuch owed for borrowed money ; and second, to distribute the residue thereof among all his general creditors ; and was in the nature of a voluntary assignment for the benefit of creditors, with preference.

" That neither said bill of sale, nor the transfer of said check and lease, operated as or was a valid assignment for any purpose whatever ; nor can said instrument operate as a bill of sale to defendants, and was and is of no force or effect.

" That the assignment made and executed by said George Scheuch to the plaintiff herein, on the 8th day of April, was and is a good and valid assignment, and conveyed to the said plaintiff all the property included in said bill of sale, and also the right to the check and lease aforesaid, or the avails thereof, and the plaintiff was thereupon entitled to the delivery to him, as such assignee, of all the property and other effects covered by said bill of sale.

" That defendants having converted the said property and effects of said George Scheuch, covered by said bill of sale and said check and lease, to their own use, must pay to the plaintiff, as assignee of said Scheuch, the value thereof.

" That the plaintiff, as assignee of George Scheuch, is entitled to judgment against the defendants herein for the sum of $20,609.33, and costs."

Judgment having been entered upon the findings, the defendants appealed to the general term.

*Walter Durack* and *Henry D. Lapaugh*, for appellants.

*Brown, Hall & Vanderpoel*, for respondent.

DALY, F. J.—The right of a general assignee to bring such an action as this is expressly given by statute (*Laws of New York*, 1858, p. 506).

In such an action it is competent for the plaintiff to show that a bill of sale transferring the whole of the debtor's property, though absolute upon its face, was, in reality, intended to operate as a general assignment for the benefit of creditors with preferences, which, under our statute, cannot be done except in the mode which the statute has provided (*Laws of New York*, 1860, p. 594; *Fairchild* v. *Gwynne*, 16 Abb. 23; *Cook* v. *Kelly*,

12 Id. 35; 1 Greenleaf's Evidence, §§ 248, 279; 1 Smith's Leading Cases, 154, 168, 169, 170).

Where, as in this case, the statute is imperative in respect to every conveyance or assignment of the real or personal property of a debtor, made to an assignee in trust for creditors, that it shall be in writing and duly acknowledged in the manner provided by the statute, before the delivery of it to the assignee, every attempt to execute such a trust by another and different mode from that of the statute, is absolutely void, and no title will pass. The statute is entitled, "An Act to secure to creditors a just division of the estates of debtors who convey to assignees for the benefit of creditors." It was passed to prevent the enormous abuses which had arisen before its passage, by permitting debtors to assign voluntarily their property, orally, or in writing, to assignees, for the payment of their debts, giving preferences, without any check or safeguard to secure creditors against dishonest debtors acting in combination with unscrupulous assignees, to prevent their property from being applied upon judgments and executions to the satisfaction of their debts; such conveyances being largely resorted to as a cover, to defeat the creditor and secure the property, or its avails, ultimately and secretly, to the use and benefit of the debtor. Indeed, as all connected with the administration of justice before the passage of this statute knew, the instances were so many and the abuse so general, as to become a reproach to the jurisprudence of the State, as contradistinguished from that of other States and other countries, and the undoubted purpose of this act was to afford some remedy by the various provisions requiring such a trust to be executed by an instrument in writing, duly acknowledged before a public officer, before it could take effect as a conveyance, and providing for the filing, with a judicial officer, within a given time, of a full inventory of all the debtor's estate, and a true account in writing of all his creditors, with their places of residence and the amount respectively due to each; an affidavit by the debtor of the truth of the account of his creditors and of his property, and requiring the assignee to give a bond for the faithful discharge of his duty, in an amount to be fixed by the county

judge, with sufficient sureties, to be approved by the officer; before the assignee could sell, dispose of, or convert the property to the purposes of the trust; with other provisions in this and in subsequent statutes (*Laws of New York*, 1867, vol. II, p. 2163), by which the assignee, after the lapse of a year, can be compelled to account before the judge in the same summary way in which executors and administrators are compelled to account before surrogates. One of the rules laid down by the judges in *Heydon's Case*, 3 Coke's Rep. 7, for the interpretation of statutes is, what was the mischief and defect against which the law did not previously provide? And where a statute is passed to remedy an existing abuse, and declares that a particular act shall be done in a certain way, it shows that no discretion was intended to be given; that it cannot be done lawfully in any other way; the statute being imperative and not simply directory (2 Coke's Institutes, 388; Co. Litt. 11, 42; *Davidson* v. *Gill*, 1 East, 64; *Collins* v. *Blantern*, 2 Wils. 347; Dwarris on Statutes, 693, 694, 697, 715; Tomlin's Law Dict., Statute ii).

A bill of sale, absolute upon its face, is conclusive only as between the parties to it. It may be impeached by third parties, and declared void upon the ground of fraud, or for the reason that it was given for a purpose other and different from what appears upon the face of it, when the purpose intended to be effected is one that cannot be lawfully done in that way, either as being against the express provisions, or as contravening the general policy and intent, of a statute (*Staines* v. *Wainwright*, 6 Bing. N. C., 174; 1 Greenleaf on Evidence, §§ 279, 248; 1 Smith's Leading Cases, 168 to 171). An instrument shown to have been designed for such a purpose, may be avoided at the suit of a judgment creditor; and under the act of 1858, before referred to, an assignee, receiver, or other trustee of an insolvent estate, may for the benefit of creditors, or others interested in the estate held in trust, disaffirm and treat as void any act done, or transfer or agreement made, in fraud of the right of any one interested in the estate held by such assignee or trustee.

It is abundantly shown by the evidence not only that the bill of sale was given, as the judge has found, with the inten-

tion that the conveyance should take effect and be carried out as a voluntary assignment for the benefit of creditors with preferences; but also that the defendants, after they got the property into their possession, attempted to avail themselves of the transfer, as if it were what it purported to be upon the face of the instrument, an absolute transfer of the property to them. The whole transaction, therefore, being void, the plaintiff, as an assignee for the benefit of creditors, was entitled to receive the value of the property to be distributed as the effects of the debtor, under the trust in the assignments.

There was no objection to the witness Dickinson stating what occurred at his office, in his presence, between Scheuch and Crofts. If he stood in a confidential relation to anybody, it was to Scheuch ; and Scheuch stated publicly in court, that he was willing that the witness should state everything that occurred there. The rule which precludes a. professional adviser from disclosing what occurred between himself and his client, was meant for the client's benefit. The great object of the rule, as Mr. Greenleaf has remarked, is, that the entire professional intercourse between attorney and client, whatever it may have consisted in, should be protected by profound secrecy (1 Greenleaf's Evidence, § 240); and that the object designed in treating all such communications as privileged was the client's protection only, is apparent in the reasons given for the rule by Lord Brougham, in *Greenough* v. *Gaskell*, (1 My. & K., 102, 103), and in *Bolton* v. *The Corporation of Liverpool*, (Id., 94, 95) ; and by Justice Buller, in his treatise upon the Law of Nisi Prius, p. 284, and afterward reiterated by him, in *Wilson* v. *Rastell* (4 T. R., 759), that " it is the privilege of the client, and not of the counsel or attorney." If the client is willing that it should be disclosed ; if it is his interest, as it may be in a case like this, that it should be, there is no reason for enforcing the rule. Thus, in *Merle* v. *Moore* (Ry. & Moo., 390), Chief Justice Best, at *nisi prius*, allowed the attorney for a bankrupt to tell what was communicated to him by the bankrupt, to show that a deed which the attorney drew, and which the bankrupt executed, of all his property, was fraudulent—the bankrupt being present and consenting—

upon the ground that the privilege was the privilege of the client, and that he might waive it; a case so nearly resembling this, upon the objection raised, that it may be regarded as in point.

The indebtedness of Scheuch to the house of Curtis & Co. in the month of April, was a proper inquiry; and the whole of the conversation, afterwards detailed as taking place between himself and the defendant Hoffbaur, was a part of the *res gestæ*, and a very important part; and the same remark applies to the objection to George Scheuch's testifying to what occurred between himself and the defendant Lorenz, before the execution of the bill of sale, as to what it was best for the insolvent to do. .The statement which the witness produced, showing the extent of the insolvent's indebtedness, which the witness thought it likely he received from one of the defendants, or which, at all events, lay upon the table, was properly received, being, as the judge said, a part of the *res gestæ*.

I can see no possible objection to the question put to the witness, upon his cross-examination as to whether he was not mistaken as to the renewal of the lease; and the appellants' counsel, in his points, has not drawn our attention to any grounds for his objection. The question put to the defendant Lorenz: Had you any intention of taking a bill of sale in trust to pay, confidential? was properly overruled. The inquiry was not what he had intended, but what was the actual agreement between the defendants and the insolvent, to be determined by his and their acts and declarations.

The evidence seems to be sufficient to show that the value found was not too great. George Scheuch testified that the stock, at its cash price, amounted to $21,400; and the judge has found that it, the check and the value of the lease, amounted to $18,850. Beyond this, I do not propose to go over the twenty-four other exceptions taken to the judge's findings, except to say, in general terms, that the facts found, which are excepted to, are legitimate deductions from the evidence, and fully sustained by it; and that the conclusions of law upon the facts found, are in conformity with the view of the law already expressed.

The judgment should be affirmed.

BARRETT, J.—It is quite immaterial whether the purposes sought to be subserved by the bill of sale in question were honest or fraudulent. In either case, the plaintiff could maintain an action for the property thus sought to be transferred. If honest, that is, if intended, by a secret trust, to operate as an assignment for the benefit of creditors, as the learned judge has found upon amply sufficient evidence, it was void, and no title passed; for the reason that the instrument was not acknowledged before delivery, as imperatively required by the Act of 1860 chap. 348; (*Hardmann* v. *Bowen*, 39 N. Y., 196; *Cook* v. *Kelly*, 12 Abb. P. R., 35; *Fairchild* v. *Gwynne*, 16 Abb. P. R., 23; *Adams* v. *Houghton*, 3 Abb. P. R. (N. S.), 46). Even if collusive, the general assignee, subsequently created, is expressly authorized by statute to recover back the property for the benefit of the creditors (Laws of 1858, chap. 314). The effect of this act is to give such assignee the same standing in court as a judgment creditor or receiver in proceedings supplementary to execution. The act has evidently been overlooked by the appellant, and it is conclusive against his principal points.

The objection to the testimony of the witness Dickinson was properly overruled. He was merely employed to do a specific act, but was not consulted professionally; nor was there anything confidential in the conversation which he narrated.

The testimony of Charles W. Scheuch was also clearly admissible. The plaintiff, as the representative of the creditors, was not concluded by the bill of sale. He had a right to go behind the mere form, and to show the substance. But irrespective of his *status*, the testimony was proper, whether treated as practically inquiring into the consideration, or as proving a trust, or upon the principle which admits evidence to show that a deed, absolute on its face, was in fact intended as a mortgage. The objection comes, too, with bad grace from the defendants, who, having by their answer, planted themselves upon this bill of sale, as *bona fide* purchasers, are thus convicted, by the finding based in part upon this evidence, of an attempt to evade the trust, and to secure Scheuch's property for their own exclusive benefit.

The remaining objections are unimportant, and unworthy of special notice. No reason is given in their support, and they are clearly untenable.

The judgment should be affirmed.