## CHARLES S. HINE AND HENRY W. PLANT, RESPONDENTS, *v.* PETER BOWE, APPELLANT.

*Transfer of all the assets of an insolvent firm — when treated as an absolute sale and not as an assignment.*

Upon the trial of this action, in which the real question involved was the validity of a transfer of all the property of the firm of Epstein & Hine to the plaintiff Charles S. Hine, it appeared that, on June 12, 1882, that firm, being then in embarrassed circumstances, executed a bill of sale to the said Charles S. Hine, transferring to him all the assets belonging to it, amounting in all to $16,204.14. On the same day Hine executed a paper which recited that, in consideration of the sale made to him by the firm, he agreed to cancel their indebtedness to him for borrowed money, amounting to $9,850, and to pay $3,300 to another person, and also to pay four items, "which are entitled to preference," the names and amount to be paid to each being stated, and, also, such other claims as Epstein & Hine might direct to be paid, as entitled to preference, not exceeding $750.

At the close of the case the counsel for the defendant requested the court to charge that "if the jury found that the firm of Epstein & Hine was insolvent on June 12, 1882, and by the bill of sale, and agreement or receipt, intended to make an assignment for the benefit of creditors, it is void, in that it is not in compliance with the general assignment act of 1877."

*Held,* that the court did not err in denying the request.

That, as there was evidence tending to show an intention to make an out and out sale, and that the indebtedness due to Charles S. Hine was to be extinguished, and that he was to pay other sums as the consideration of the purchase, not out of the proceeds of the property sold, but absolutely and without reference to the source from which the money to make the payments should be derived, the intent with which the two papers were executed and delivered was to be determined by the intention of both the seller and purchaser, and would depend as much upon the intent of the latter as upon that of the former.

*Britton* v. *Lorenz* (3 Daly, 23; affirmed, 45 N. Y., 51); *Wallace* v. *Wainwright* (87 Penn., 263) distinguished.

APPEAL from a judgment entered upon the verdict of a jury and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Michael H. Cardozo,* for the appellant.

*William H. Arnoux,* for the respondents.

PATTERSON, J.:

This is an appeal from a judgment entered upon a verdict in favor of the plaintiff. There are two causes of action set forth in

the complaint, one for the conversion of tobacco and cigars alleged to belong to the plaintiffs, and the other for a trespass upon premises in the possession of the plaintiffs, and the prevention of the use by the plaintiffs of such premises and of tools and machinery situated therein, and used by them in their business; such trespass and prevention continuing for a period of about two months.

The answer sets up as specific defenses, that the defendant being sheriff of the city and county of New York, under process issued out of the Court of Common Pleas against Max Epstein & Charles F. Hine, levied upon and attached the goods referred to in the complaint, and that the goods so levied upon and attached were taken by the sheriff as, and that they were the property of Epstein & Hine; that in order to take the said goods, the defendant, as sheriff, entered upon the premises as he was by law obliged to do, and that the entry, levy and taking constituted the alleged trespass and conversion in the complaint mentioned.

The answer then states that the plaintiffs claim to be the owners of the goods levied upon and taken by the defendant, by virtue of an alleged bill of sale or conveyance to one of them from Max Epstein & Charles F. Hine made on or about the 12th day of June, 1882; that such bill of sale was made by the sellers with the intent to hinder, delay and defraud creditors and that the plaintiff, Charles S. Hine, took the bill of sale with previous notice of the fraudulent intent of Epstein & Hine; that there was no immediate change of possession, and that the transaction was a device to cheat the creditors of Epstein & Hine.

Evidence was given upon all the matters of defense suggested in the answer, and an examination of the record discloses that the real question involved on this appeal relates to the validity of the transfer made by Epstein & Hine to the plaintiff Charles S. Hine of the property and assets claimed to have passed by the bill of sale, and to the effect of the transaction by which the plaintiff Charles S. Hine was clothed with the legal title to all that property. It appears in evidence that Epstein & Hine on the 12th day of June, 1882, were in embarrassed circumstances, and that on that day, Charles S. Hine, one of the plaintiffs, took a bill of sale of everything constituting the assets belonging to the firm of Epstein & Hine, namely, stocks, tobacco, cigars, fixtures and accounts considered good, notes

considered good, accounts and notes considered doubtful, amounting in all to $16,204.14.

Upon looking into the record we find that similtaneously with taking the bill of sale Charles S. Hine executed a paper which recites that "in consideration of the sale to him by Epstein & Hine, he agreed to cancel their indebtedness to him of borrowed money amounting to $9,850, and to pay the sum of $3,300, borrowed by them from Mrs. Moseman," and also to pay four items " *which are entiled to preference,*" namely, " *$280.43, to Jacob Henkel; $1,424, to L. C. and J. Elson ; $300, to C. A. Thaxton & Son; $300, to Mary J. Hine, and such other sums for wages, merchandise recently purchased and other claims as Epstein & Hine may direct to be paid, as entitled to preference not exceeding $750.*" It, therefore, appears from this paper that Charles S. Hine's debt was to be paid by the transfer to him of property, and that other debts of Epstein & Hine were to be paid by Charles S. Hine, as to some of which debts Epstein & Hine were subsequently to specify to whom payment should be made, and that the ground upon which Charles S. Hine contracted to pay them was, that they were entitled to preference in the payment of the debts of Epstein & Hine. Under this state of facts the appellant claims that the transaction of the twelfth of June, as evidenced by the papers, was merely intended as an assignment by Epstein & Hine to Charles S. Hine, of the property of that firm for the benefit of their creditors, and that Charles S. Hine was made a trustee of the property to pay the debts of Epstein & Hine to himself and the other persons entitled to preference as creditors of that firm. It is urged on the other hand by the respondents that the transaction was an out and out sale, and that what Charles S. Hine agreed to do with respect to the payment was only a method of applying the purchase-money.

At the close of the case counsel for the defendant requested the court to charge the jury in the following· words : " If the jury find that the firm of Epstein & Hine was insolvent on June 12, 1882, and by the bill of sale and agreement or receipt, intended to make an assignment for the benefit of creditors it is void. in that it is not a compliance with the general assignment act of 1877." The court refused so to charge, and this ruling is assigned as a ground of error. There was evidence in the case given by Charles S. Hine

upon his cross-examination, to the effect that early in June, 1882, he was desirous of having secured to him an indebtedness due to him by Epstein & Hine and that he met both members of that firm at the office of Mr. Ritch, a lawyer, on the 5th of June, 1882, and asked them for a statement of their affairs. Thereupon the witness proceeded to say (as by the printed case) as follows : " The next thing that took place was I told Mr. Ritch I should like to have my debts secured, and Mr. Ritch, after hearing what had been said, suggested two or three ways for them to secure me and the other preferred creditors, one was either to make an assignment or to confess judgment, or to make a bill of sale, and Mr. Ritch advised me if I would do it to cancel my indebtedness, to let them make a bill of sale to me of all they had ; for me to take a bill of sale and agree to pay off these preferred creditors and pay Mrs. Moseman and to pay all the other creditors." After an hour's consultation, it was finally decided that they should make me a bill of sale of all their property provided I would take it."

An instrument, in the form of a bill of sale, transferring the whole of a debtor's property, though absolute upon its face, may be shown to have been intended only as an instrument to operate as a general assignment for the benefit of creditors, with preferences. (*Britton* v. *Lorenz*, 3 Daly, 23 ; affirmed, 45 N. Y., 51.) If the instrument is shown to have been so intended, it is void as against our statute. But in the cases in which the point has been decided it appears that the very assets passing by the bill of sale or the proceeds thereof, were to be applied to the payment of the debts of the sellers, or in other words, that the property passed as trust property, to be held specifically in trust and to be applied to the payment and satisfaction of creditors. Thus in *Britton* v. *Lorenz* (*supra*), there was a finding that the bill of sale was made and executed to the defendant in trust, to convert the goods and other property into money and out of the proceeds thereof to pay debts. In *Wallace* v. *Wainwright* (87 Penn., 263), the question arose under the Pennsylvania statute, which is similar to ours, except that preferences are not allowed in that State. There a debtor executed to an attorney for some of his creditors an assignment of various claims and judgments, and by the assignment it was stated that it was made in payment of certain specific creditors and the judgments and

claims assigned were named in a schedule annexed to the assignment.
It was held upon these facts that the instrument was a mere assign-
ment for the benefit of creditors and was void for non-compliance
with the general assignment act of Pennsylvania.

It will be seen from the facts in the cases cited, that they differ
materially from those arising on this appeal, and that the point here
presented was not directly involved in those cases. Here there is
evidence tending to show a purpose of making an out and out sale
and that the indebtedness due to Charles S. Hine was to be
extinguished, and that he was to pay other sums as the consideration
of a purchase not out of the proceeds of the property sold, but
absolutely and without reference to the source from which the
money to make the payments should be derived, and that constitutes
so clear a distinction that under the particular state of facts appearing
in this case the intent of the sellers only in executing the bill of sale
cannot be the fair test of the purpose of the transaction. We, of
course, do not mean to hold that the intent of an assignor alone is
not sufficient to invalidate an assignment, but in this case the real
question is broader. It is with what intent were the two papers
delivered for the agreement of Charles S. Hine is a necessary part
of the transaction. Did he know of or participate in a fraudulent
purpose of Epstein & Hine?

The learned judge was asked to submit to the jury only a question
of the intent of Epstein & Hine, but in the form in which the
transaction was made and under the obligation which Charles S.
Hine assumed, to pay certain creditors of Epstein & Hine as a
method of applying the purchase-money, the question of intent would
depend as much upon his purpose as upon that of Epstein & Hine;
and as the proposition which the learned judge was asked to charge
was partial and incomplete in its terms, had it been charged the
jury would have been misled. Looking into the charge we find
that the jury was fully instructed upon the essential question, namely,
was the transaction one made with intent to hinder, delay or defraud
the creditors of Epstein & Hine, and that if that were the fact the
transfer was fraudulent and void and consequently did not pass any
title to the property to Charles S. Hine. Having left the question
to the jury in the form in which he did, we think there is no error
in the case. The other matters urged as grounds of error by the

learned counsel for the appellant all depend upon the validity of the bill of sale with the exception of the claim that no partnership between the plaintiffs was proven, and that the complaint should have been dismissed on that ground. The refusal to nonsuit on that ground was right. The agreements and other papers in evidence show that the plaintiffs intended to and did create a partnership relation between themselves, and that was done evidently to give Plant the power and authority of a partner in conducting the business of the firm. The limitation of his interest to a guaranteed weekly sum was not so decisive of the question of the existence of a partnership *inter se* as to authorize the withdrawal of the case from the jury.

The whole case was properly submitted to the jury on the real question involved and as we can find no error in the charge nor in the rulings of the learned judge on evidence, the judgment must be affirmed with costs. The order denying the motion for a new trial is also affirmed.

BRADY and BARTLETT, JJ., concurred.

Judgment and order affirmed with costs.