## Dows *et al. v.* Greene *et al.*

A shipping bill, executed by the owner of property and of the canal boat on which it is laden for transportation, stating that it is to be delivered as addressed, viz., "Account J. F. M., care of Dows & Cary," though not signed by the master of the boat, nor containing any words of negotiability, is substantially a bill of lading, and affects the title to the goods in the same manner as if it were in regular form.

Under such a bill, Dows & Cary are the consignees, and have a lien under the factors' act (chap. 179 of 1830), in respect to any money advanced by them to J. F. M.

*It seems* that, at common law, and independent of the factors' act, the transfer of a bill of lading to a *bona fide* holder would transfer the title in the same manner as a transfer of the goods, although the bill had been obtained from the owner of the property by fraud. *Dows* v. *Perrin* (16 N. Y., 325), in this respect questioned.

APPEAL from the Supreme Court. Replevin for two thousand five hundred and sixty-five bushels of corn, upon which the plaintiffs had made an advance of thirty-eight cents per bushel, for which they asserted a lien, under circumstances sufficiently stated in the following opinion. The reference therein to the case of *Dows* v. *Perrin* (16 N. Y., 325,) makes it proper to call attention to this diversity in the facts: In *Dows* v. *Perrin*, evidence was offered and excluded showing fraud on the part of Bloss, who, as agent of Mack, procured a bill of lading of the corn from a clerk who, as it then appeared, had no authority to execute such a bill. The existence of such fraud was, therefore, assumed in the decision. In this case, all fraud on the part of Bloss was disproved; and there was no evidence that Mack, his principal, was guilty of, or contemplated any fraud, at the time when the bill of lading was procured.

After the property was replevied, it was redelivered to the defendants, and the plaintiffs had a verdict for its value, at forty-four cents per bushel, instead of the amount of their advances. The judgment on the verdict was affirmed at gene-

ral term in the third district, and the defendants appealed to this court.

*William D. White,* for the appellants.

*Lyman Tremain,* for the respondents.

DAVIES, J. This is an action for the claim and delivery of 2,565 bushels of corn, and damages for the detention. The plaintiffs claim as consignees, and as the *bona fide* owners and holders of the bills of lading thereof, upon which they had made advances. The facts in this and other cases, growing out of the same transactions appear in the reported cases of *Dows* v. *Greene* (16 Barb., 72), *Dows* v. *Perrin* (16 N. Y, 325), *Dows* v. *Rush* (28 Barb., 157), and *Dows* v. *Greene* (32 Barb., 490). This case has been retried before one of the justices of the Supreme Court, without a jury, who has found certain facts, which having been affirmed at general term, are conclusive upon this court. He finds that Niles & Wheeler, from whom both parties claimed title to the 2,565 bushels of corn in question, were partners, dealing in produce in Buffalo, during the year 1848, and were also engaged with one Caleb in the transportation business; and that Niles & Wheeler, as produce merchants, were the owners of the corn. That on the 7th of August, 1848, the corn was on board the lake boat Montezuma, and that on that day, one Bloss made a contract of purchase of the same, with Niles, one of the partners, for cash, half to be paid on Friday, the 11th, and half on Satur day, the 12th of August. That Niles & Wheeler were to ship the corn for Bloss on board the boats of the transportation company, owned by them and Caleb, for New York, and to transport the same there for thirteen cents a bushel, to be paid by Bloss. That the contract was in fact made by Bloss, as the agent of one I. F. Mack, but he did not disclose the fact of such agency until after the agreement had been made, and until after the bill of lading had been issued. In pursuance of this agreement the corn was transhipped from the Montezuma

to the canal boat Neptune, on the 7th of August. That on that day Bloss obtained from Walker, a clerk in the office of Niles & Wheeler, a bill of lading for said corn, which stated that the corn had been "shipped in good order by Niles & Wheeler, agents, on board the boat Neptune, ———, master, marked and consigned as in the margin, to be delivered as addressed without delay." In the margin was as follows:

| Account I. F. Mack, care of Dows & Cary. | Freight to New York, a bushel, 13 cents. [Signed] NILES & WHEELER. *per* E. H. WALKER. |

That Bloss obtained said bill of lading in good faith, and Walker had authority to execute it for Niles & Wheeler, and it was so in fact executed by Walker with the knowledge and sanction of one of the firm of Niles & Wheeler. That said shipping bill was by said Bloss, sent to Mack at Rochester, who, on the 8th of August, at Rochester, obtained from the agent of the plaintiffs there, an advance on said bill of lading, upon the faith thereof, and that such advance was made by the plaintiffs in good faith, upon said bill of lading, without any notice or knowledge of any kind to them or their agent of any fraud having been committed or intended by any one in the purchase of said corn, or in obtaining said bill of lading. That on the 10th of August, Bloss gave notice to Niles & Wheeler that he had not received the money from Rochester to pay for said corn, as he had expected, and for that reason could not complete the purchase for it, and then first informed them that he was acting as the agent of Mack in the purchase and not on his own account. Bloss proposed to Niles & Wheeler to send a man to Rochester to get the money, and if it could not be obtained, he would give up the corn. A person in the employ of Niles & Wheeler went to Rochester, and he and Bloss arrived there on the 11th, and found that Mack had failed and absconded the day previously, and had on that day made a general assignment. On the 12th of August, Niles & Wheeler assumed to sell the corn to Durfee & Co., who paid them for it, and they, Durfee & Co., delivered the

Dows v. Greene.

corn to the defendants. The judge found as conclusion of law that the plaintiffs were the consignees of the corn and obtained a lien thereon under the factor's act for the sum advanced upon the faith of the said bill of lading. That the plaintiffs as *bona fide* purchasers for value to the extent of their advances were entitled at common law, as well as under the statute, to the possession of the corn at the time of the commencement of this suit.

A similar transaction was under consideration in this court, in the case of *Dows* v. *Perrin (supra)*. We then held that a paper similar in all respects to that in the present case, was a bill of lading, and it now being found as a fact, that Walker had authority to issue the bill for Niles & Wheeler, the objections to a recovery in that case, based on Walker's want of authority, have now no force or application. The bill of lading was therefore put in circulation by the authority of Niles & Wheeler, and we deem the law to be well settled that in such a case, a *bona fide* assignee for value, can hold the goods represented by the bill. We entirely concur in the wisdom and force of the remarks made by Lord CAMPBELL in *Gurney* v. *Behrend* (3 Ellis & Bl., 622), that ever since the great case of *Lickbarrow* v. *Mason*, the law has been considered to be that the *bona fide* transferree for value of a bill of lading, indorsed by the shipper or his consignee, and put into circulation by the authority of the shipper or consignee, has an absolute title to the goods freed from the equitable rights of the unpaid vendor to stop *in transitu* as against the purchaser, and we believe it to be of essential importance to commerce that this law should be upheld."

But the facts found by the referee bring the present plaintiff directly within the protection of the factor's act. In this case, the corn was shipped in the name of Mack and he is to be deemed the true owner, so far as to entitle the plaintiffs, who were the consignees thereof, to a lien thereon for the money advanced by them for the use of Mack, in whose name the shipment was made. Such lien is not impaired by the second section as it is proved as matter of fact, that the consignees

had no notice by the bill of lading or otherwise, at or before the advancing of the money, or at or before the receipt thereof by Mack, in whose name the shipment was made, that he was not the actual and *bona fide* holder thereof. (Chap. 179 of 1830.) The judgment appealed from should be affirmed, with costs.

SMITH, J. The case of *Dows* v. *Perrin* in this court (16 N. Y., 325), decides that the paper executed by Walker in the name of Niles & Wheeler, and delivered to Bloss, and subsequently indorsed by Mack to the plaintiff's firm, was a bill of lading. The paper upon which the plaintiff's title to the corn in question depended in that suit was in the precise form with the one given in evidence on the trial of this action, and the same relate to, and are part and parcel of the same transaction. The only difference between them consists in the fact that the quantity of corn specified in them is different and also the name of the boats in which it was shipped. That question must therefore be deemed *res judicata.*

It was also decided in that case that upon the proofs given on the trial there was no satisfactory evidence that Walker had authority to execute said bill of sale in behalf of Niles & Wheeler, and that as the paper purported to be executed by an agent it was incumbent upon the plaintiff to prove that he was duly authorized to execute the same for his principals. It was therefore held that the circuit judge should have decided as matter of law that Niles & Wheeler are not bound by such bill of lading and the plaintiff should have been nonsuited.

On the trial of this action which took place since the decision of *Dows* v. *Perrin* the plaintiff gave evidence tending to establish the authority of Walker, and the judge before whom the case was tried without a jury, finds as matter of fact "that Walker had authority to execute it (the bill of sale) for Niles & Wheeler and that it was in fact so executed by Walker with the knowledge and sanction of one of the firm of Niles & Wheeler." Assuming this finding on the facts to be conclusive on that question, it remains to consider what legal

inferences are deducible therefrom in connection with the other facts in the case.

The first inquiry that suggests itself is, what is the force of the bill of lading thus established. Niles & Wheeler were the vendors of the corn, and they the carriers or agents for the carriers. This bill of lading therefore executed by them imported a sale of the corn to Mack, and a delivery to, and receipt of, the same by them for the transportation company of which they are the members and agents, for transportation to New York, with a consignment of the same to Dows & Carey, the plaintiff's firm. This bill of lading is dated August 7, 1848. It was delivered to Bloss the same day and sent to Mack at Rochester who on the next day (August 8) indorsed it to Dows & Carey and delivered it to their agent Chappell and procured his indorsement of a draft then and there made by him upon the consignees, which he caused on the same day to be discounted at Bank, and then and there received the proceeds thereof. The plaintiff's firm therefore upon the faith of this bill of lading, and another of the same date and import for corn shipped on the boat Cuba, advanced Mack $1,800, on the 8th of August. Mack having thus obtained these bills of lading and on the faith of them large sums of money upon drafts upon Dows & Carey fails and absconds on the 10th of August. Which of these parties, the vendors of the corn or the plaintiff's firm must sustain the loss is the question practically involved in our decision.

It is claimed by the appellants that Mack having obtained the bill of lading fraudulently, the title to the corn never passed to him, and that he could not transfer any title to it by the assignment of the bill of lading. A bill of lading doubtless is not negotiable like a bill of exchange. But to a certain extent it is a substitute for the property embraced in it, and is transferable, and its assignment and delivery is equivalent to a sale and delivery of the property. (*Fitzhugh* v. *Williams*, 5 Seld., 565; *Gibson* v. *Stevens*, 8 How. U. S., 399.) Its delivery is symbolical of the property, and the title passes by delivery of the bill of lading wherever it could pass by

bill of sale of the property, accompanied by actual deli very.

A person who had stolen a bill of lading could not assign it so as to pass the property, any more than a person can give title to stolen property, or property tortiously taken.

It is a fundamental rule in the law of property, that a man cannot be deprived of his property without his consent or fault. But when he has consented to part with the possession of his property upon a contract of sale, and actually delivers it, though it be to a fraudulent vendee, the title passes and he may lose it, and will if the fraudulent vendee, before he rescinds the contract, or reclaims the property, or stops it *in transitu,* sells it to a *bona fide* purchaser.

A contract of sale, infected by fraud, is valid as against the party committing the fraud, and is valid to pass and to protect a transfer of the property when there is an absolute delivery as against the vendor till it is rescinded. As against him and in his favor, it is a voidable contract, voidable at his election; as against all other persons it is a valid contract until rescinded. (*Mann* v. *Walsh,* 8 Cow., 238; *Evans* v. *Saltus,* 12 Pick., 306; 20 Wend., 272.)

Now I conceive that the same rule applies to this bill of lading that would apply to a case of sale and delivery of personal property. It is not, strictly speaking, negotiable in a commercial sense; but it is assignable like any common law security. It is just as capable of transfer as is the property specified in it. The corn mentioned in this bill of lading was a vendible commodity. This bill of sale represents the corn. An assignment and delivery of the bill of lading is equivalent in legal force to the sale and delivery of the corn. It is documentary evidence of title in and to the property specified in it, and conclusive as against all the parties to it in the hands of a *bona fide* holder. Such is the rule of the common law as settled in numerous cases and recognized since the celebrated case of *Lickbarrow* v. *Mason* (2 Term, 63; *S. C.,* H. Bl., 392; 6 East., 21). In that case ASHHURST, J., said "The delivery of the bill of lading, as between the vendee

and third persons, is a delivery of the goods themselves." GROSS, J., said " The question was whether the bill of lading transfers the property. I think it does." BULLER was of the same opinion. This case was greatly discussed and carefully considered, was reviewed in the Exchequer and in the House of Lords, and is generally considered as settling two questions; first, that the unpaid vendor may stop the goods *in transitu*, upon the insolvency of the vendee; secondly, that this right of stoppage *in transitu* will be defeated by the transfer of the bill of lading to a *bona fide* indorsee before the right of stop· page is exercised; the assignment of the bill of lading, in such case transferring the property. (1 Smith's Leading Cases, 879.)

And this rule stands, it seems to me, upon impregnable ground in equity — upon the principle that whenever one of two innocent persons must suffer by the act of a third, he who has enabled the third person to do or occasion the injury, or commit the fraud, if it be one, must sustain the loss. The application of this plain 'principle of equity will cast the loss in this case upon the vendors, Niles & Wheeler.

Upon the finding upon the facts they are responsible for the existence of this bill of lading — for its delivery to Bloss — for its possession by Mack. They did contract to sell the corn to Bloss. They did deliver it on board the canal boat on the 7th of August, when it was not to be paid for till the 11th or 12th, and in transportation, and they suffered the boats to leave Buffalo for their destination with the corn on board under the bill of lading. They thus put it in the power of Mack to procure credit on the faith of the bill of lading, and to secure an advance upon the corn from the consignee and commit the fraud. Upon these facts, Niles & Wheeler should be held concluded by their bill of lading, and should be deemed estopped from setting up, as against an innocent consignee, that the same was procured by fraud, or that the sale of the property was conditional, and that the title never passed to Mack. They have certified in their bill of lading that they had received this corn from Mack to transport to Dows & Co.,

the consignees, and cannot be permitted to falsify their own written statement. So far as the question depends upon the rules of common law, as deduced from the decided cases, the rights of the consignees to this property are superior to those of the vendors.

But if this were not so, I do not see how the appellants could escape the effect of the act in relation to principals and factors and agents, passed April 16, 1830 (chap. 179, p. 203). The first section is as follows:

"SEC. 1. After this act shall take effect every person in whose name any merchandise shall be shipped, shall be deemed the true owner thereof, so far as to entitle the consignee of such merchandise to a lien thereon; 1st, for any money advanced, or negotiable security given by such consignee to or for the use of the person in whose name such shipment shall have been made: and 2d, for any money or negotiable security received by the person in whose name such shipment shall have been made to or for the use of such consignee." This act was not referred to in the decision of the case of *Dows* v. *Perrin.*

The finding on the facts that Walker was authorized to sign this bill of lading, makes it the act of Niles & Wheeler. The plaintiffs accepted negotiable drafts and paid them on the faith of this bill of lading, and are expressly and distinctly within the protection of this act. The drafts were made by Mack, on the 8th of August and indorsed by Chappell for plaintiffs' benefit and discounted on that day. The plaintiffs were bound to accept on their contract made with Mack and Chappell, and after the discount of the drafts could not refuse to pay them. They were bound to pay them to protect Chappell, who was their agent, and acting for their benefit in the transaction.

A single point remains. It is claimed that the recovery is excessive, and that the plaintiffs should only have recovered the amount of their advance. The property was not delivered to the plaintiffs. The proper judgment, therefore, was for the recovery of possession of the property, and in case a delivery of the said property cannot be had that the plaintiffs recover

the value thereof. Such is the judgment. But the plaintiff has no claim to anything further than to receive the amount of his advance and damages for detention, and beyond that the equitable interest in the property belongs to the general owners or the defendants as their representatives. The value was assessed at the full value of the property instead of the plaintiffs' special property. This, I think, was the proper measure of value. *Fitzhugh* v. *Wyman* (5 Seld., 599), where, as in this case, the plaintiff has only a special property. But no question of this kind was made on the trial, and the value was assessed at 55 cents instead of 38 per bushel, without objection or exception. The excess that the plaintiffs may recover will belong to Messrs. Niles & Wheeler, as the general owners or their consignees, but the error cannot now be rectified in this action.

The judgment of the court below, should therefore be affirmed.

DENIO and SUTHERLAND, Js., did not concur in the opinion that the title to the corn would have passed had the bill of lading been procured by fraud. They put their concurrence upon the ground that the plaintiffs were within the protection of the factors' act. SELDEN, Ch. J., did not sit in the case.

Judgment affirmed.