Gage v. Jaqueth.

---

CHARLES H. GAGE, survivor of JOHN H. GAGE and CHARLES H. GAGE, Respondents, v. SAMPSON JAQUETH, Appellant.

(GENERAL TERM, FIFTH DISTRICT, OCTOBER, 1869.)

A writing, which is, in form, a bill of lading, but signed only by the consignor, is not a bill of lading.

In an action brought against a carrier by a consignee to recover damages

Gage *v.* Jaqueth.

for injury to goods, while *in transitu*, the plaintiff gave in evidence a writing in the usual form of a bill of lading, signed by the consignor only, by which it appeared that the defendant had received the goods for transportation, subject to the ordinary liabilities of a common carrier.— *Held*, defendant might show in defence a contract to carry, subject to the owner's risk.

Irrespective of the statute of frauds, a party who has not signed a written agreement, is not bound by it.

The remarks in *Worrall* v. *Munn* (1 Seld., 229), to the contrary, disapproved.

A written instrument, adopted by parties as containing a contract between them, but not mutually signed, is not conclusive evidence of such contract.

APPEAL from a judgment upon a verdict for plaintiff, on a retrial before the County Court of Onondaga county.

The action was brought to recover for damage to sugars, which the defendant had undertaken to transport and deliver to the consignee.

Plaintiff proved the delivery of a cargo of sugar to the defendant's agents on the 21st May, 1868, for transportation to Syracuse by canal, and also the delivery of the following writing to the defendant's captain :

"NEW YORK, *May* 21*st*, 1868.

"Shipped by C. H. Gage & Co., on board boat Fannie Jaqueth, of Liverpool, Capt. J. W. Peiton, the following goods, in apparent good order, viz.:   (Description of goods.)

"On safe delivery of all the above, as consigned, Messrs. J. H. Gage & Co., pay captain one dollar per ton, less seventy-seven 48-100 dollars, advanced to the captain.

"C. H. GAGE & Co."

The sum of seventy-seven 48-100 dollars was credited on the bill in part payment of the freight.

Plaintiff also proved damage to the sugar on account of defects in the defendant's boat.

The remaining facts are stated in the following opinion :

*J. A. Clark*, for the appellant.

*R. H. Gardner*, for the respondent.

Present—BACON, FOSTER, MULLIN and MORGAN, JJ.

Gage v. Jaqueth.

By the Court—MULLIN, J.   It appears by the case that there was a firm by name J. H. Gage & Co. at Syracuse, and a firm by the name of C. H. Gage & Co., at New York. The former firm was composed of C. H. Gage and J. H. Gage.   Who compose the latter firm does not appear.

The former firm was dissolved on the 19th May, 1868, by the death of J. H. Gage.

On the 21st the contract between the parties for the carriage of the sugar mentioned in the contract was made and the sugar delivered to the defendant to be carried to Syracuse.

A contract with the firm of J. H. Gage & Co., could not then be made; but must have been made with the survivor, C. H. Gage.   He alone could sue upon it.

J. H. Gage & Co. being the consignees of the sugar are to be deemed owners, and entitled to sue for loss of, or injury to it, by the carrier.

C. H. Gage, being survivor of the firm was entitled to receive the sugar, and to sue the carrier if not delivered in good order.   Adding the word survivor does not impair his right; it is a mere *descriptio personœ.*

If I am right in the foregoing views of the relations of the parties, it is wholly immaterial who composed the firm of C. H. Gage & Co.   They are the consignors merely.   And as a firm, so far as we know, without interest in the sugar.

The objection to the plaintiff's right to recover because of any defect of the parties was properly overruled.

The action being for the injury to the property while in the possession of the carrier, the price at which the property was to be carried was a matter wholly immaterial to that issue.

If, by the contract between the consignor and carrier the goods were to be at the risk of the owner, that was a matter of defence, and proof of it devolves on the defendant.

The plaintiff, however, put in evidence what he claimed to be the contract under which the goods were carried; and by it the carrier received the property subject to the ordinary liability devolving on common carriers; one of

which is, responsibility for injuries to the property, not result-ing from inevitable accident or the public enemy.

The defendant, by way of defence, offered to prove by parol, that by the agreement between him and the consignors, the goods were to be carried at the risk of the owner; and, as a consignor, he was not liable for such injury.

The evidence was rejected on the ground that it contra-dicted or varied the written contract put in evidence by the plaintiff, and which was taken to be the contract under which the goods were carried.

That contract was in writing and in form a bill of lading; but it was signed by the consignors only, and not by the captain of the vessel on which the sugar was laden, nor by any other person on the part of the defendant.

The contract was not a bill of lading, as it was not signed by the captain or the defendant. (*Dows* v. *Greene,* 24 N. Y., 638, and cases cited.)

But it was competent for the parties to enter into an agree-ment not in form a bill of lading; and such contract, if proved, will bind the parties as effectually as a bill of lading.

The question then is, was the defendant bound by the writing, as being the contract under which the sugar was carried?

It will be borne in mind that it is not signed by the defendant, nor by any one representing him. The captain received the paper, carried it with the goods to Syracuse, and there delivered it to the consignees.

As a general proposition, no person is bound by a written agreement who has not signed it. (*Wood* v. *Edwards,* 19 J. R., 205; *Townsend* v. *Corning,* 23 W., 435; *Tucker* v. *Woods,* 12 J. R., 190.)

The question as to what constitutes a contract, minute, or memorandum of a contract, has frequently arisen in Eng-land under the stamp acts. The courts have generally leaned to give full effect to those acts, by bringing within their operations all instruments which could by reasonable intendment be held to be reached by them.

Gage v. Jaqueth.

In *Doe* v. *Pedgriph* (19 E. C. L., 402), it appeared that in an agreement for the letting of certain houses, which was put in writing by the lessee's agent, but was not signed by either, both parties signed a writing on the back of the draft, in the following words: "We approve of the within draft." It was objected to the introduction of this paper, that it was not stamped.

The court, however, held that it was not a contract, minute, or memorandum of a contract, and hence need not be stamped. It was a mere statement of what they intended to agree to.

It was held in *The King* v. *Inhabitants of Leicester* (2 A. & E., 212), that a writing drawn by lessor's agent and signed by the unauthorized agent of the lessee, containing the terms of the letting, but not signed by the lessor, was not a lease, nor an agreement for a lease; and hence the pauper, who was named as lessee, did not gain settlement by occupancy under such agreement.

See, also, *Vaughton* v. *Brine* (39 E. C. L., 484); *Chadwick* v. *Clarke* (50 E. C. L., 699); *Drant* v. *Brown* (10 E. C. L., 211); *Doe* v. *Cartwright* (5 E. C. L., 306); *Hawkins* v. *Warre* (5 D. & R. 512); *Parker* v. *Dubois* (1 M. & W., 30); *Wilson* v. *Bowie* (12 E. C. L., 18); *Stevens* v. *Pinney* (4 E. C. L., 167).

There is a class of cases, in which it has been held that a party who does not sign a contract may enforce it, and may be made liable upon it at law as well as in equity. (*Ballard* v. *Walker*, 3 John. Cases, 60; *Roget* v. *Merritt*, 2 Caines, 117; *Gale* v. *Nixon*, 6 Cow., 445; *Worrall* v. *Munn*, 1 Seld., 229, and cases cited by PAIGE, J.)

The cases cited, and all others belonging to the same class, are cases within the statute of frauds, as they arise on contracts for the sale of lands or goods.

It was competent for the legislature to prescribe a mode of executing contracts which would bind all parties to them, although part only should sign them; and this is precisely what courts hold the legislature has done, in the enactment of the statute of frauds.

The contract before us, is not within the statute, and the consequences resulting from an omission of the defendant to sign it are not removed by the statute.

I have been unable to find a case in which it has been held, that a party named in a written agreement was liable upon it when he had not signed it. PAIGE, J., in *Worrall* v. *Munn, supra,* says: This principle (that a party not signing a contract executed in conformity to the statute of frauds, was liable upon it if he accepted and acted upon it), was applied to contracts not within the statute in *Randall* v. *Van Vechten* (19 J. R., 60); *Bank of Columbia* v. *Patterson* (7 Cranch, 299); and in *White* v. *Cuyler* (6 Term R., 176). I do not so understand the cases.

In *Randall* v. *Van Vechten,* the defendants were a committee of the common council of Albany, authorized to employ a surveyor, and to cause to be made a survey of said city, with maps, &c. The committee entered into an agreement with the plaintiff in their individual names, and sealed with their respective seals, as party of the first part for the performance of said work. The plaintiff sued. The defence was, that the work was done for the city. The court held defendants not liable; that the contract was so executed, as to give an action against the city, and if not, defendants were liable. The contract being neither signed nor sealed by the corporation, it was not liable in covenant; but as the defendants were authorized to bind the city, their signatures bound it, but the contract was a parol contract merely, not a covenant.

The *Bank of Columbia* v. *Patterson,* was in all respects similar to the former, and the ruling was the same.

In *White* v. *Cuyler* the action was *assumpsit* for the passage money of the plaintiff from Barbadoes to England; the defendant's wife entered into an agreement to employ plaintiff to accompany her to Barbadoes; and if she dismissed plaintiff, to pay her passage home. Mrs. C. was not authorized to execute agreement for her husband under seal. It was held that assumpsit would lie.

Gage *v.* Jaqueth.

In this case, Mrs. C. was the agent of her husband, and as such, capable of making the contract with the plaintiff, but could not bind him by a seal. As in the other cases referred to, assumpsit lay upon the agreement; but not covenant. See, also, *Hanford* v. *McNair* (9 Wend., 54.)

When the parties to an agreement have caused it to be reduced to writing, and hence recognize it as containing the terms finally agreed upon between them, but have not signed it, there are very good reasons for refusing other evidence of the contract.

But if the mere verbal assent of the parties to the correctness of the writing, is to obviate the necessity of signing in one case, or class of cases, it must in all; and thus the written contract would be practically dispensed with.

It would not be claimed that if an unsigned note was delivered by a person, who should be maker, to the payee, accompanied with the declaration that it contained his promise which he would perform according to its terms, it would become thereby a promissory note, and that it could be enforced as such.

Such a paper is, however, some evidence of indebtedness and may be used for that purpose. But it is of no more force than a mere verbal promise would be. It is evidence liable to be rebutted by the parties sought to be charged.

It is only when the contract is completed by the signing of the parties that it becomes the evidence, and the best evidence of the agreement of the parties. Until then, it is of no greater force than the evidence of a witness.

When a jury is satisfied that an unsigned writing has been adopted by the parties, containing the terms of the agreement, evidence of witnesses varying or contradicting the writing will be received and acted upon with great caution; but such evidence is competent.

If these views are correct the evidence offered by the defendant should have been received.

The judgment of the County Court should be reversed and a new trial ordered in that court.

All the judges concurring, judgment is reversed and new trial ordered in County Court.

Ordered accordingly.