Miller, J.
Upon the trial of this case at the Circuit, the defendants’ cou'nsel excepted to that part of the charge of the judge to the jury, to the effect that the plaintiff was entitled to recover if the jury believed that the arrangement for the delivery of the wheat to the railway company was as it is stated to. have been by Worthington. Assuming that the exception covered a portion of the charge as made, the principal question in the case arises, I think, upon this exception. A proper consideration of this question involves the inquiry as to the effect of the order made by Worthington by which it is claimed he parted with the plaintiff’s claim to the grain.
The evidence showed that the wheat in question was purchased at Milwaukie for Worthington, and paid for by a draft on Worthington, payable to the order of D. Ferguson, cashier. This draft together with the bill of lading, in which *47 it was stated that it was on account of D. Ferguson, cashier, and to the care of Worthington, and a policy of insurance upon the same, was sent to the plaintiff for the purpose of having the draft collected. To meet this draft Worthingtou made his note, payable to the order of the plaintiffs president, at the bank, in thirty days, which was discounted at the bank, which at the same time received from Worthington an indorsement of the bill of lading and the insurance policy as security for the loan. The delivery of the bill of lading to the plaintiff was a good symbolical delivery of the grain, and the plaintiff thereby acquired a lien upon it or title to it, and was fully authorized to hold it until the loan was paid. (Bank of Rochester v. Jones, 4 Comst., 497, 507; City Bank v. Rome, Watertown and Ogdensburgh R. R. Co., 44 N. Y., 136.) The judge ruled at the trial that the plaintiff was a mortgagee of the grain; but whether the plaintiff held it as mortgagee, pledgee, or by any other title, is not material so long as the title or the right to the possession was vested in the plaintiff. To all intents and purposes the plaintiff’s property in the wheat was clearly established and beyond any question.
The plaintiff being thus entitled to the wheat, it remains to be considered whether it did any act by its officers or by means of its authorized agent, which has deprived it of the title which it had acquired. The bank itself did no act, and if any was committed which impaired the plaintiff’s ownership of the wheat, it was done by means of Worthington, who, by an arrangement or understanding when the note was dis counted, was to take charge of the cargo upon its arrival and place it in store subject to the order of the plaintiff, as seen rity for the draft which had been discounted. Worthington did place it in store accordingly, and took a receipt -for it subject to his own order ; which was contrary to the arrangement with, and without the knowledge*»!, the plaintiff. He had an undoubted right to exercise a control over the disposition of the wheat, for the benefit of the plaintiff; and had he sold it absolutely to any party, without notice of the *48 rights of the bank, the plaintiff would have no ground to complain, as he would be acting entirely within the scope of his authority, as the plaintiff’s agent, in so doing. I think he did not make any such disposition of the grain as depri ved the plaintiff of its title thereto. The oral agreement which he had made with Nims was without any direct authority from the plaintiff; but assuming that such authority existed in Worthington as plaintiff’s agent, the contract with Nims not being in writing, nor any money paid or property delivered, it was void within the statute of frauds. It vested no title whatever in Nims, individually or otherwise. Neither party was lawfully bound by it, and each of them would be justified in refusing to perform it. Nor, in my opinion, did Nims acquire any right to the grain by the mere delivery of the order by Worthington to him. The order, upon its face, conferred no right upon Nims to receive the grain, and no such construction can legitimately be placed upon it. The true meaning and effect of the order was," that the wheat should be delivered to the Erie ¡Railway Company, for Worthington himself. This did not authorize Nims or any one else to receive a bill of lading from'the company, or the company to transport the same, without further directions. The fact that Nims had possession of the order, of itself, conferred no right to take out a bill of lading in his own name. If it had been delivered to a clerk or an entire stranger and handed to the company, neither of them would be justified in giving him a bill of lading and transporting the wheat for his benefit. Or if, after the receipt had been delivered, Nims had refused to pay before he had received a bill of lading, he would not be liable, because he delivered the order without some extrinsic evidence to establish a sale.
There was a conflict in the evidence as to whether the blank between the words “ to ” and “ order ” had been filled up with a black line from a pen; but assuming, as is claimed, that the words “ subject to-order ” were erased, it made no-difference, and the legal effect was the same. In this form *49 it was a notice to the railway company, to whose freight agent it was delivered, to hold the wheat until Worthington, who had signed the order, gave directions in regard to it. Certainly, it would not bear the interpretation that it was subject to Nims’ order, for his name was not mentioned. It did not direct that the grain should be shipped in Kims’ name or in any other name, except Worthington’s, or in any way convey the idea that Nims was the owner of the grain, or that any other person but Worthington, who had signed the order, had a right to control it.
We have been referred to a class of cases which, it is claimed, hold that the order in question was sufficient to authorize a delivery of the wheat. I think they are not analogous, and in no way decisive upon the question of delivery. In Rawls v. Deshler (3 Keyes, 512), the order was to deliver to the purchaser of the grain or order, and it was delivered on the production of the order, and shipped by him in his name. The words “subject to order until paid for” may well be held to be evidence of an agreement between Deshler, who made the draft, and Griffin, who purchased the grain, that Griffin should hold it subject to Deshler’s order until payment should be made. The order simply transferred the grain, subject to the lien of Deshler, and the principle decided has no application.
In Dows v. Greene (24 N. Y., 638), the seller of the grain made and delivered to Bloss, the agent of the buyer, Mack, a bill of lading for “ account J. F. Mack, care of Dows & Gary.” The consignees, Dows & Cary, advanced money, in good faith, on the bill, and it was held that they had a lien under the factors’ act, as well as upon equitable grounds. This is not applicable to the case at bar, and no case is cited which holds the doctrine that the'delivery of an order of this kind confers authority upon a person not named in it to receive a bill of lading in his own name, to the detriment of the real owner.
The defendants’ counsel claims that the railway company had the wheat for Kims, as his bailee, as soon as it was placed *50 in the cars, and not for Worthington, between whom and the Erie Bail way Company there was no privity of contract. In this, I think, he is mistaken, as the order itself, on its face, showed that Worthington was in possession and had the control of the wheat. The authorities cited to show the legal effect upon the possession of a delivery order have no application to a case where the order itself shows .who is entitled to control the property, as was the case here. Conceding the rule, as claimed by the learned counsel for the defendants, that delivery to the carrier is constructive delivery to the vendee (see Wilkes v. Fontaine, 5 J. R., 335; Ludlow v. Bowne, 1 id., 16; Ellis v. Hunt, 3 Term, 464), it does not affect this case, unless Nims was the actual vendee, which was a disputed qúestion of fact upon the trial, and submitted to the consideration of the jury by the judge.
It is plainly manifest, I think, that there was no delivery of the grain to Nims by means of the order referred to, within the statute of frauds, which divested the plaintiff of its title. Nor does the .fact proven on the trial, that Nims had previously made arrangements with the Erie Railway Company for the tranportation of the grain, help the plaintiff’s case. The question of delivery, as between Worthington and Nims, depends upon the arrangement between them, and in no respect upon the knowledge which any third party had of the-, intention- of one of them, for if such was the case, it, might well be that an innocent party would be deprived of his rights by the secret arrangement to dispose of property fraudulently obtained.
The question whether Worthington had made an arrangement to part with the possession of the property, or intended to retain-the title and control of it until Nims paid for it, depended upon facts proved upon the trial in connection with the order. Worthington testified that he did-not make any such, arrangement, and did not mean to part with the title or possession; and there is a conflict in the testimony as to some of the leading facts bearing upon this question, which it was eminently proper to submit to the consideration of the jury, as *51 was done in the charge. If the construction placed upon the order is correct, then it cannot be claimed that Worthington, by his own act and fault, had clothed Nims with the possession and apparent title to the wheat, so that he was enabled to obtain the wheat, place it into the hands of the carrier, and secure a bill of lading, by means of which the money was obtained of the Farmers and Mechanics’ National Bank. Nor do I think there was any neglect upon the part of Worthington, which interfered with the title of the plaintiff to the grain, and the right to maintain this action. It follows from the views expressed, that there was no error in that portion of the charge, and that the exception is not well taken.
At the close of the plaintiff’s testimony, the defendants’ counsel moved for nonsuit, upon two grounds: First, that the plaintiff had no property in the wheat; second, that the demand was not accompanied with any evidence of the plaintiff’s right of possession. As to the first ground, we have already seen that the wheat was delivered to the plaintiff, by the delivery of the bill of lading, and it thereby acquired a claim to the wheat, which entitled it to maintain an action for its conversion. The possession of the wheat was in the plaintiff, when it received the bill of lading, and Worthington merely acted as the plaintiff’s agent in making the sale of it. The receipt taken for the wheat by Worthington, in his own name, was wúthont authority and did not divest the plaintiff of the title which had been lawfully acquired. The demand of the wheat and refusal of the defendants to deliver the same, was sufficient to show a conversion.
It was stipulated on the trial that there had been such a demand and refusal, and that the defendants claimed the right to hold the same. This embraced every thing necessary to establish a lawful demand and refusal, and the plaintiff was not bound at the time to show evidence of its claim. If it was so bound, it was waived by the stipulation read upon the trial.
The factors’ act (Sess. Laws of 1850, chap. 179), so called, has, I think, no application to a case like the one at bar. I *52 concur with the opinion of the General Term, that this act only applies in favor of the consignees named in the hill of lading. The Farmers and Mechanics’ Bank was not a factor or consignee of Nims, and as Fiske & Co., the consignees, did not accept the draft drawn upon them to pay for the wheat, they had no claim by means of the consignment. In the case of Dows v. Green (32 Barb., 490; on appeal, 24 N. Y., 638), which is relied upon, 'the plaintiffs were the consignees named in the bill of lading. But there are other reasons, it appears to me, why the factors’ act should have no application in this case. The grain was not, according to the verdict of the jury, shipped in the name of Nims with the consent of Worthington or of the plaintiff. Nims was not the factor or agent of either of them; had no authority to receive the bill of lading, and only obtained it by an act which wras tortious and unlawful. Nor was the Erie Railway Company intrusted with the possession of the wheat for the purpose of sale or security for advances within the third section of the act in question. In no aspect of the case can the defendants be brought within the provisions of said act.
The point is not well taken, that the plaintiff cannot recover more than the amount of its advances. As the defendants were wrong-doers the plaintiff was entitled to recover for the full value of the wheat, and, if a recovery was had, liable to account to the owner, whoever it might be, for whatever remained over and above the plaintiff’s advances.
It is also insisted that the damages cannot exceed the value of the wheat at the time of the conversion, with the interest upon the same, and that the judge erred in refusing to charge, as requested, to the above effect. At the time of the trial it was supposed that the rule stated prevailed, hut recent decisions of this court have corrected that impression, and explained and qualified the cases which seemed to justify the ruling at the Circuit. The rule is, that, in the absence of special circumstances, the value at the time of the conversion, with interest, furnishes the rule of compensation. (Baker v. Drake, 53 N. Y., 211; Ormsby v. Vermont Copper Mining *53 Co., 56 N. Y., 623.) The request to charge, therefore, was right, and the judge should have charged accordingly. This error may he corrected by directing that the judgment be modified in this respect, and. does not-necessarily lead to a reversal of the judgment entered on the verdict and to a new trial.
There is no ground for claiming that nothing can be recovered beyond the proceeds of the sale, and no error was committed by refusing to charge accordingly.
The discussion had embraces all the questions raised upon the trial by the requests to charge and otherwise which it is material to consider; and as no error is apparent, except in the rule of damages laid down, the order of the General Term must be reversed and judgment ordered on the verdict if plaintiff stipulates to deduct from the verdict $1,574.44, the difference between the value of the wheat allowed upon the trial and the value of the wheat at the time of the conversion and the interest thereon from that time to the time of the trial, and neither party in that event to recover costs in this court as against the other. If the plaintiff does not * stipulate within thirty days then the order of the General Term must be affirmed and judgment absolute ordered for the defendants, with costs.
All concur.
Ordered accordingly.