## HOAGLAND v. SEGUR.

1. An agreement not to engage in, or pursue a particular business or profession, when made on a good consideration, with one whose business interests it is to prevent competition, is valid if restrained within reasonable limits; and such agreement belongs to that class with respect to which it is competent for the parties, by agreement, to liquidate the damages to be recovered on a breach.

2. Where the agreement contains several stipulations of different degrees of importance, and a sum is named as liquidated damages, an intention to make the sum so determined payable on the breach of minor and unimportant parts of the agreement will not be imputed in the absence of language declaring such intention with precision.

3. Where the sum named in an agreement is not a penalty, but is liquidated damages, which is recoverable, not as the representative of an actual debt, or as the measure of actual compensation, but as the damages fixed by the parties to be recovered on a breach, the verdict must be for that precise sum. Interest on it from the date of the breach cannot be added.

4. S., a private banker at D., entered into an agreement with the plaintiff to sell and convey to him the premises on which he carried on the banking business. The agreement contained a covenant by S., that as soon as the plaintiff, or a banking company, which he proposed to organize, should commence the business of banking on the premises, that then, and from thenceforth, the said S. should withdraw, in good faith, as soon as practicable from the business of banking at D., and should abstain from receiving and accepting any money on deposit as a banker therein; and should not, at any time, for the space of ten years thereafter engage, directly or indirectly, in the business of banking at D. It was further agreed, "in order to ensure the observance by said S. of his said covenant to abandon, abstain from, and not engage in the business of banking for the period aforesaid in D., that in case of any breach thereof by him, the damages to be recovered in any action against him for such breach, shall be, and they are hereby fixed and liquidated by the parties hereto, at the sum of $10,000." In an action against S. on this covenant assigning breaches, (1) that the defendant did not withdraw in good faith from the banking business, as soon as practicable after the plaintiff's bank commenced business; and (2) that he did not abstain from receiving deposits, &c. *Held*, on a construction of the whole agreement:

1. That the word business was not used in the clause liquidating the damages to denote the single act of receiving deposits, but the aggregation of acts which fairly constitute the occupation of a banker.

2. That the sum named as liquidated damages applied only to the covenants to withdraw, in good faith, as soon as practicable from the business of a banker; and not at any time within ten years to engage in the business of banking; and was not recoverable on proof of the mere fact that the defendant received deposits after the new banking company commenced business.

Segur, the defendant was engaged in business as a private banker at Dover, in the county of Morris. His business was confined to receiving and paying out deposits, and discounting commercial paper. He was the owner of a lot of land on which he was erecting a banking-house in which he proposed to carry on his business of banking.

Hoagland, intending to associate himself with other persons to organize a banking association, to be located and do business in Dover, entered into an agreement, under seal, with Segur, for the purchase and conveyance of the lot of the latter on which his banking-house was then in process of erection. This agreement bears date on the 9th of November, 1872, and stipulated for the completion of the building by Segur, at his own expense, by the 1st day of January, 1873, and the conveyance by him of the premises to the plaintiff on that day.

A conveyance of the premises to the plaintiff was duly made at the time named.

On the 19th of December, 1872, the plaintiff and others associated themselves together in the organization of the National Union Bank of Dover, a banking association under the laws of the United States, to be located and do business at Dover, and on the 17th of February, 1873, the association entered into the possession of the said banking-house and commenced the business of banking.

The agreement of the 9th of November, 1872, also contained the following covenants on the part of Segur :

" Whereas, it is part of the consideration of this sale of said lot and banking-house, that said Segur shall withdraw from the business of banking, and not engage in the same at any time within ten years in the borough of Dover aforesaid.

Now it is further agreed between the said parties, and said Segur doth hereby covenant and agree with the said Hoagland, that as soon as said new banking company or association so expected to be organized, or any banking company to whom the said Hoagland, his heirs or assigns, may hereafter lease, convey or assign said premises and banking-house, or any part of the same, shall commence the business of banking therein, then and from thenceforth the said Segur shall withdraw in good faith as soon as practicable from the business of banking in the said borough of Dover, and shall abstain from receiving or accepting any money on deposit as a banker therein; and shall not, at any time, for the space of ten years thereafter, engage directly or indirectly in the business of banking in said borough of Dover, either as a private banker, a capitalist, or as a shareholder or director in, or as an officer or employé of any banking company or association, or savings bank, located in or doing business in said borough of Dover. . . . . . . And it is further agreed and understood, that this covenant on the part of said Segur to abandon, abstain from, and not engage in the business of banking in said borough of Dover for the period of ten years, is made for the benefit of said Hoagland as the owner of said lot of land and banking-house, and shall attach to and run with the same in the hands of any heir or heirs, assignee or assignees, grantee or grantees of said Hoagland; and in case of any breach of the same by said Segur, an action may be maintained thereon against him by the person or persons, or body corporate who shall, at the time of such breach, be the owner of the fee simple of said lot of land so hereby agreed to be conveyed; and it is further agreed, in order to ensure the observance by said Segur of his said covenant, to abandon, abstain from, and not engage in the business of banking for the period aforesaid in Dover aforesaid, that in case of any breach thereof by him the damages to be recovered in any action against him for such breach, shall be, and they are hereby fixed and liquidated by the parties hereto, at the sum of $10,000."

On rule to show cause why a verdict should not be set aside.

Argued at November Term, 1875, before the CHIEF JUS-TICE, and Justices DEPUE and VAN SYCKEL.

For the rule, *Vanatta*, Attorney-General, and *Joseph C. Potts*.

Contra, *H. C. Pitney*.

The opinion of the court was delivered by

DEPUE, J. This action was brought on the above recited covenant, by the plaintiff suing for the use of the National Union Bank of Dover. The breaches assigned were, that the defendant did not withdraw from the business of banking, &c.; and that he did not abstain from receiving deposits, &c.

It appeared, in evidence on the part of the plaintiff, that when the bank took possession of the new banking-house, the defendant removed to another building in Dover, where he proposed "to wind up his business as a banker;" and that after the 17th of February he continued, from day to day, to receive deposits until the 7th of April, 1873.

The plaintiff, on this evidence, which was not contradicted, contended that the second of the breaches assigned was proved, and that he was thereon entitled to a verdict for the sum named in the agreement as liquidated damages. The contention of the defendant was, that receiving deposits is included in the business of a private banker; and that under that agreement the defendant was authorized to continue that business until it was practicable to withdraw from it without financial ruin or embarrassment; and that the evidence of the receipt of profits was only pertinent on the issue, whether he had withdrawn from the business of banking, in good faith, as soon as it was practicable.

The defendant further insisted, that if any recovery was had on this evidence, it could only be for the damages actu-

ally sustained from the non-performance of that part of his covenant.

The court charged the jury, that the defendant, under the language of the agreement " to withdraw, in good faith, as soon as practicable from the business of banking," had a reasonable time after the establishment of the new bank on the premises within which to withdraw from the business of banking, but that the stipulation, with respect to receiving deposits, was an independent stipulation, compelling the defendant to wholly abstain from receiving money on deposit after the new bank commenced its business, and that the taking of any deposits after that time was a breach of the covenant.

The court further charged, that the plaintiff was entitled to recover the sum of $10,000, with interest from the 8th of April, 1873, and directed a verdict accordingly.

It was conceded on the argument, that receiving money on deposit is part of the business of a banker. Taking money on deposit is not an incidental and occasional operation connected with banking. It is one of the main features and principal departments in the business. In the statutes, a place of discount and deposit is treated as synonymous with a banking-house. With a private banker, not authorized to issue circulating notes, the two departments which make up the business of banking, are the taking of deposits, and the making of discounts. Everything else usually done by them, such as the selling of exchanges, and making collections, are only incidental to the business in which they are engaged. *Bouvier's Law Dict., Banks and Banker ; Curtis* v. *Leavitt,* 15 *N. Y.* 52, 56, 256. It is said by Mr. Morse, in his Treatise on Banking, that to render an individual a banker, he must receive, on general deposit, the funds or money of other persons, which he must mingle together or with his own money or capital, in a general fund for the prosecution of some description of banking business. *Morse on Banking, Preface* xxxvi. In the present case, the business previously engaged in by the defendant, with reference to which the

Hoagland v. Segur.

agreement was made, was that of a private banker, receiving deposits and making discounts. The moneys received by him, after the banking-house was taken possession of by the new bank, were, with only three exceptions, amounting to the sum of $690, from persons who had previously deposited with him as a banker.

If the construction of the agreement by the court below be correct, the defendant was entitled to a reasonable time for closing his business of banking after the new bank commenced operations—a substantial and beneficial provision in favor of the defendant; and he must at once refrain from one of the constituent and essential parts of that business, and on the receipt of a deposit thereafter, was to be subjected to the payment of $10,000, as liquidated damages. A construction leading to such an unreasonable result, can only be sustained upon clear and unequivocal language in the agreement.

That an agreement not to engage in or pursue a particular business or profession, when made on a good consideration, with one whose business interest it is to prevent competition, is valid, if restrained within reasonable limits, is too well settled to be regarded as an open question. The agreement also belongs to that class with respect to which it is competent for the parties, by agreement, to liquidate the damages which should be recoverable on a breach. *Whitfield* v. *Levy*, 6 *Vroom* 149.

The parties have also used apt and proper words to make the sum named in the agreement liquidated damages. The question is, whether they have made the mere taking of deposits the condition on which that sum is payable. That question is not necessarily dependent on the result of the inquiry whether the receipt of deposits is interdicted by some one of the terms of the agreement.

While the courts have allowed parties to adjust in advance, and stipulate for the damages to be awarded in certain cases for the non-performance of agreements of this kind, they have adopted certain rules of construction for determining when such an adjustment has taken place. The general rule

is, that where the agreement contains disconnected stipulations of various degrees of importance, the sum named will be considered as a penalty, though it is called liquidated damages, unless the agreement specify the particular stipulation, or stipulations to which the liquidated damages are to be confined. As was said by Lord Coleridge in *Magee* v. *Lavell, L. R.* 9 *C. P.* 115, " the courts refuse to hold themselves bound by the mere use of the words liquidated damages, and will look to what must be considered, in reason, to have been intended by the parties in relation to the subject matter." The intention must be derived from the whole agreement, and if it be doubtful upon the whole agreement, whether the sum named was intended to be a penalty or liquidated damages, it will be construed to be a penalty. *Whitfield* v. *Levy, supra.*

These principles of construction which have been established in cases where the issue was whether the sum named was a penalty or liquidated damages, with respect to any of the stipulations in the agreement are equally applicable to cases in which the issue is whether the damages liquidated are applicable to any particular stipulation. In every case the parties to such an arrangement are, in fact, controlled in fixing the sum which shall be compensation for non-performance by the importance of the main object and purpose of the agreement, without regard to minor details. An intention to make the sum so determined on payable on the breach of minor and unimportant parts of the agreement, will not be imputed, in the absence of language declaring such intention, with precision.

In the present case the purpose of the plaintiff in requiring these covenants was to exclude competition in the " banking business." That is apparent from the preceding recital; that it was part of the consideration of the agreement that said Segur should " withdraw from the business of banking, and not engage in the same, at any time, within ten years." The same expression, " business of banking," is used in the two most important members of the covenant, which was framed to that end. ·It was also made a substantive part of the

Hoagland v. Segur.

arrangement that the defendant should not be required to close his banking business immediately. He had a reasonable time after the plaintiff, or his representative, commenced the business, to accomplish that end—"to withdraw in good faith as soon as practical." When that was accomplished he was not to engage in the "business of banking," for a stipulated time.

In the succeeding paragraph it is declared that this covenant on the part of said Segur "to abandon, abstain from and not engage in the business of banking," was for the benefit of the plaintiff as owner of the lands, and should run with the land to his heirs or grantees. And in the clause prescribing the liquidation of damages, it is in express words provided, in order to ensure the observance by Segur of his said covenant, "to abandon, abstain from and not engage in the business of banking for the period aforesaid;" that in case of "any breach thereof" the damages to be recovered for such breach, shall be, and they are hereby fixed and liquidated, at the sum of $10,000.

It is perfectly manifest that the parties, in their own minds, determined on this large sum as the measure of compensation in view of the injury which might result to the plaintiff from the competition of the defendant in the business of a banker, and not out of regard to the stipulation not to receive "any money on deposit," which, if literally enforced, would seriously embarrass the defendant in closing his business, and would be broken by receiving a single deposit, though not the slightest appreciable injury would thereby result to the plaintiff, and in my judgment they have so expressed it in their agreement. The sum of $10,000 is made payable on the breach by the defendant of his covenant "to abandon, abstain from and not engage in the business of banking." The term business is not used here to denote the single act of receiving deposits, but the aggregation of acts which fairly constitute the occupation of a banker. It is a word which is frequently used as synonymous with occupation, and signifies more than the mere doing of acts which are usually done

by persons engaged in the pursuit of a particular calling. This interpretation is adapted in the construction of contracts of insurance; (*Stone* v. *U. S. Casualty Co.*, 5 *Vroom* 371; *Gates* v. *Madison Co. Ins. Co.*, 1 *Seld.* 469;) and is recognized by the courts in discussing the question whether the testimony amounts to proof of the violation of agreements of the character of that sued on.     *Turner* v. *Evans*, 2 *E. & B.* 512; *Brampton* v. *Beddoes*, 13 *C. B.* (*N. S.*) 538.

There are in this agreement two members of the covenant which expressly provide for this subject, in each of which the same expression, "business of banking," is employed, which gives point and application to the concluding member of the agreement, which declares the liquidation of damages.     To these covenants alone the liquidation of damages is applicable. This construction is in accordance with the legal significaation of the language.     It is also that which, on a consideration of the whole agreement, was manifestly intended by the parties in relation to the subject matter.

Whether the testimony of the continued receipts of deposits from February to the succeeding April, would be sufficient proof to sustain a verdict for the plaintiff on the covenant, to withdraw from the business, as soon as practicable, cannot, at present, be considered.     That question was not submitted by the court below as a question of fact.     The court held that the receipt of deposits after the banking company commenced business was, *per se*, such a breach as entitled the plaintiff to the liquidated damages.     This we think was erroneous.

Interest on the $10,000 from April 8th, 1873, was also included in the verdict.

In cases where the contract is for the payment of money, or the performance of a collateral act, and the sum named is strictly a penalty—the actual debt or damages only being recoverable—a recovery for the full amount thereof is sometimes allowed, in the shape of interest or damages, in excess of the sum named as the penalty.     *Lonsdale* v. *Church*, 2 *T. R.* 388; *Long's Adm'r* v. *Long*, 1 *C. E. Green* 59; *Martin*

v. *Taylor*, 1 *Wash. C. C. R.* 1. But where the sum named is not a penalty, but is liquidated damages, which is recoverable, not as the representative of an actual debt, or as the measure of actual compensation, but as the damages fixed by the parties to be recovered on a breach, the verdict must be for that precise sum. The precedents are uniformly to that effect.

The application of this principle to the present case is eminently proper, in view of the language of the parties. They agree that the damages to be recovered in any action shall be the sum of $10,000. A jury cannot assess damages when the parties themselves have fixed them. *Mayne on Damages* 170.

The verdict should be set aside, and a new trial granted. Costs to abide the event.