JEFFERSON HOTEL CO. v. BRUMBAUGH et al.

ARENTS v. MEREDITH & COCKE et al.

(Circuit Court of Appeals, Fourth Circuit. March 12, 1909.)

Nos. 852, 888.

1. EQUITY (§ 399*)—REFERENCE TO MASTER —MASTER'S AUTHORITY.

Parties to an equity cause may, by a consent decree, constitute a special master an arbiter to settle specified matters in dispute.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 399.*]

2. EQUITY (§ 409*)—REFERENCE TO MASTER—FINDINGS—EFFECT.

In a suit to enforce a mechanic's lien, the bill prayed that defendants, except a hotel company, be compelled to appear and set up their rights, claims, and liens, and that the court settle the rights of the defendants to a fund and the property in question. In response to such prayer, the hotel company charged all its codefendants to be subcontractors under plaintiff,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

but declared itself unadvised as to the amount, nature, or extent of their claims or liens, and asked that the other defendants prove their accounts and their respective priorities before one of the masters of the court. *Held*, that such prayer did not bind the hotel company to abide the master's judgment concerning the matters in controversy between it and plaintiff, so that the court on the filing of a master's report was entitled to review the master's findings of fact and law.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 921; Dec. Dig. § 409.*]

**3. APPEAL AND ERROR (§ 1022*)—REVIEW—FINDINGS BY MASTER—CONCURRENCE BY COURT.**

Where a cause is referred to a master to report his findings of fact and conclusions of law, the master's findings and conclusions ·concurred in by the court will be sustained on appeal unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4015–4017; Dec. Dig. § 1022.*]

**4. CONTRACTS (§ 287*)—BUILDING CONTRACTS—FINAL ARCHITECTS' CERTIFICATES —CONCLUSIVENESS—BURDEN OF PROOF.**

Where a building contract constituted the architects the owner's supervising agents, but did not in terms authorize the architects to issue a conclusive final certificate, an architect's final certificate was only prima facie evidence that the work had been performed according to the contract, and placed the burden of proof on the owner to impeach the same for error, mistake, omission, or concealment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1330, 1331; Dec. Dig. § 287.*]

**5. CONTRACTS (§ 287*)—SUBSTANTIAL PERFORMANCE.**

On the completion of a contract for the reconstruction of part of a hotel, the architect's certificate recited that there was due the contractor $17,-841, from which the owner was entitled to deduct $3,631.63, of which $956.71 was for bills assumed by the owner for the contractor and $200 was for defective plastering, leaving $2,274.92 or less than 5 per cent. of the contract price, representing the value of uncompleted work. *Held* that, though the owner was entitled to credit for such sum, it was not sufficient to show that the contract had not been substantially complied with, so as to justify the owner in refusing to pay the contractor the balance.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1330, 1331; Dec. Dig. § 287.*]

**6. DAMAGES (§ 85*)—PENALTY—BUILDING CONTRACTS—DELAY.**

Where the owner of a building in process of erection let a large amount of the work and the furnishing of materials to independent contractors, and their delay caused part of the general contractor's delay, the owner was chargeable with the independent contractor's delay, and the general contractor would be relieved ·from liability for a contract penalty for delay, as the court would not attempt to apportion the same.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 184; Dec. Dig. § 85.*]

**7. PRINCIPAL AND AGENT (§ 171*)—AUTHORITY OF AGENT—ESTOPPEL TO DENY.**

Where the owners of a building in process of erection permitted the architects, who were the owners' supervising agents, to contract for extras without protest, and, after the extras had been inserted, continued in possession and enjoyment thereof, the owners could not thereafter deny the general authority of the superintendents to order them.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 644–655; Dec. Dig. § 171.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**8. CONTRACTS (§ 232\*) — BUILDING CONTRACTS — EXTRAS — ORDER IN WRITING — WAIVER.**

Where the owner of a building retained possession and the enjoyment, without protest of extras orally ordered of the contractor by the superintendent, and the owner was estopped to deny the general authority of the superintendents to give the order, a contract provision that all extras should be ordered in writing was waived.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 232.\*]

**9. ATTORNEY AND CLIENT (§ 182\*)—SERVICES OF ATTORNEY—FUND PROCURED BY SERVICES.**

A contractor for the reconstruction of a part of a hotel having substantially performed, but not having secured a large part of the price because of a controversy between him and the hotel company, and being a nonresident insolvent, certain attorneys instituted a suit in the contractor's name and established the contractor's claim against the solvent hotel company, which inured solely to the benefit of subcontractors and creditors of the contractor. *Held*, that the attorneys were entitled to a lien on the fund for their services prior to distribution, and this though an assignee of one of the creditors entitled to a part of the fund had other and additional security for his debt, the distribution of the fund not affecting the rights of the subcontractors and creditors to enforce their demands for any balance remaining unpaid against the contractor personally.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 400; Dec. Dig. § 182.\*]

Dayton, District Judge, dissenting in part.

Appeals from the Circuit Court of the United States for the Eastern District of Virginia, at Richmond.

Henry R. Miller, John Pickrell, and L. L. Lewis, for appellants.

Charles V. Meredith and Preston Cocke (James L. Harman, on the brief), for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge. The matter in controversy here arises under a building contract between Brumbaugh and the Jefferson Hotel Company for a part of the rebuilding of the Jefferson Hotel in Richmond, Va., which had been partially destroyed by fire. Jurisdiction in equity is acquired by reason of the bill setting up and seeking to enforce a mechanic's lien against the property by the contractor for labor done and materials furnished under the contract. To the bill a number of subcontractors, who had filed mechanics' liens as such, are made parties defendants. The contractor claims in his bill for a balance of contract price and for extra work performed. The hotel company defends because (a) of contract being uncompleted, (b) of denial of contractor's claims for extras, and (c) of its own claim against the contractor for delays in completion of the contract within the time fixed by it. The contract was executed in duplicate in July, 1901 —the exact day is matter of dispute—and provides that the contractor was to furnish all labor and material necessary for the reconstruction according to plans and specifications made by A. H. Elwood & Sons, architects, "who will also superintend the work"; that the work was to be completed on or before the 1st day of October, 1901, "excepting

delays caused by the party of the second part"—the hotel company—and in default of completion within the time fixed the contractor was to pay a penalty of $150 for each day of delay thereafter, and, on the other hand, he was to be paid a bonus of $150 for each day the contract might be completed prior to said October 1st. The contract price of $48,700 was to be paid from time to time as the work progressed upon estimates made by architects, with reservations of 20 per centum until the work was completed. The conditions of the plans and specifications material to this controversy are:

"Inspection: Work and materials to be subject to inspection at all times by the superintendent. Should the contractors refuse or neglect to remove work or material declared by the superintendent to be faulty within three days after having been notified in writing by the superintendent to so remove it, then the owner shall have the right to have such faulty work or material removed, and proper work or material substituted therefor, at the contractors' expense. Should the contractors refuse or neglect at any time during the progress of the building to supply a sufficiency of materials or workmen, or cause any unreasonable delay of the work, or fail or refuse to comply with any of the articles of agreement, including these specifications, the owner shall have the right to enter upon and take possession of the premises and provide materials and workmen sufficient to finish said work, after three days' written notice, directed and mailed to the residence of or delivered personally to the contractors by the owner, or by the superintendent.

"The expense of finishing said work to be deducted from the contract price.

"Changes: The owner reserves the right to make any changes that he may decree expedient during the progress of the work, without invalidating any agreements or contracts; but previous to any change being made the price of such change shall not be considered an extra unless written orders have been given therefor, and the price thereof stipulated in such order.

"Payments: Payments will be made during the progress of the work upon the estimates of the superintendent; twenty per cent. of the value of all work done being always retained until the completion of the work and a final settlement has been made, after which a final estimate shall be made covering all balances due.

"Payments made during the progress of the work shall not be considered as an acceptance either of work or material, but the contractor shall be held to all the conditions of the contract until all the work is completed and accepted.

"Measurements: Scale measurements upon the drawings are never to be taken where figures for the same are given either in drawings or in specifications. Any discrepancy appearing between plans, details and specifications shall be referred to the architect for decision and in no case shall the work proceed in uncertainty, but the contractors shall apply to the architect who will supply all further details or explanations as may be necessary for the full understanding of the work and such further details and directions shall be received and executed as a part of this contract."

In addition to this contract, the hotel company awarded some 11 other independent contracts for elevator work, kitchen apparatus, cold storage, electric work, heating, plumbing, ventilation, machinery, tile and marble work, art and skylight glass, and for wrecking and removal of old walls.

The cause was referred to a special master, who was directed to ascertain and report (1) what amount, if any, was due to the plaintiff by the defendant under the contract; (2) what amounts, if any, were due subcontractors under mechanics' liens filed by them; (3) all liens against the hotel company's real estate; and (4) any other pertinent matter deemed necessary by himself or required by the parties to be

stated. The special master took a large amount of testimony, and returned an elaborate report, to which exceptions were taken by both plaintiff and defendant hotel company. The plaintiff, however, withdrew his objections and now abides by the report, failing to perfect a cross-appeal taken by him. The defendant hotel company insisted upon its exceptions, but they were overruled by the court below, the master's report in all respects was confirmed, and a decree entered holding the hotel company liable for a balance of $14,209.37 of contract price and for $13,884.13 for extra work done. From this decree the hotel company has appealed.

Meanwhile, on the same day this decree was entered, Meredith & Cocke and James L. Harman, attorneys, filed their petition in the cause, alleging, in substance, that they were employed by Brumbaugh, the contractor, to enforce his mechanic's lien against the hotel company, for the benefit of his subcontractors, to the extent of some $28,-000; that, as to such subcontractors, Brumbaugh virtually acted in the capacity of trustee; that the sums found due by the master's report were not sufficient by about 2 per cent. to pay the claims of such subcontractors; that Brumbaugh was bankrupt and nonresident of the state; that they were entitled to reasonable fees as such attorneys, had a lien therefor upon the fund, that a large majority of the subcontractors had voluntarily admitted the existence of such lien, and had offered to pay them 15 per cent. of their claim in satisfaction thereof, which they were willing to accept, although insufficient, in friendly adjustment, inasmuch as such subcontractors had their own counsel, who had to be paid; that several of said subcontractors, however, declined to consent to such payment, wherefore they ask that the court decree them 15 per cent. of the claims of such subcontractors declining to pay. Upon this petition no process issued, but, by the decree complained of entered the same day this petition was filed, its prayer was granted, and 15 per cent. of the fund was awarded and decreed to them. Among the subcontractors whose claims were so decreed was one in favor of George Arents, assignee of the Richmond Woodworking Company.

This company had not only filed its mechanic's lien, but had also given the notices required by statute to the hotel company, whereby the hotel company, by reason of having made payments to its contractor subsequent to such notice, had become personally liable for the debt, and it was entitled to be paid in full prior to all other subcontractors' claims—except one other in the same condition—out of the fund found due from the company to Brumbaugh, the contractor. This claim was assigned by the woodworking company to George Arents, who substantially owned all the stock of the hotel company. Arents had employed the same counsel to represent him in this claim as represented the hotel company and no contractual relation existed between him and the petitioning attorneys, nor did he in any way consent to the 15 per cent. allowance agreed by other subcontractors. The court, however, allowed 15 per cent. of his claim to these attorneys, to which action he has taken the appeal named second in the caption, and heard by us conjointly with the original cause.

The very able and exhaustive arguments made by counsel have been

largely devoted to discussion of the voluminous quantity of evidence produced before the master, and, independent of a few legal principles involved, the controversy turns almost wholly upon questions of fact, the evidence as to which in most instances is conflicting.

It is important at the threshold to determine the legal effect of the master's report and the decree of the court below confirming it. It is insisted by counsel for the contractor that the allegations of defendant company's answer constituted a consent on its part to refer the cause to a special master to determine, practically as an arbiter, all the matters in controversy, and that therefore it was bound by his report, and could only impeach it by apt allegations in pleading, and by satisfactory evidence, for fraud. It is therefore insisted that the court below erred in trying the cause de novo on any question of fact. While it cannot be denied that parties to an equity cause may, by a consent decree, constitute a special master in effect an arbiter to settle specified matters of dispute, we do not think the contention that this was so in this case can be maintained. It is not contended that the decree of reference was a consent one, but that the allegations of the bill and answer in effect made it so. Turning to the prayer of the bill, we find that it nowhere asks for a reference, but that the—

"defendants named, except the Jefferson Hotel Company, be compelled to come in and set up their rights and claims and liens, * * * and that the court may fully and completely and forever settle and adjust the rights of the said defendants to the said fund and property."

Responding to this prayer, the hotel company's answer charges all its codefendants to the bill to be subcontractors under plaintiff, to have performed labor and furnished material as such subcontractors, to have filed mechanics' liens, but declares itself unadvised as to the amounts, nature, or extent of such claims or liens,

"and defendant unites with plaintiff in asking that these other defendants who have been made parties be required to prove their accounts and their respective priorities, etc., before one of the masters of this court."

This was but a simple demand that proper proof be required of the subcontractors as to the character, amount, and priorities of their respective claims, and in no way bound the hotel company to abide by the master's judgment as to the substantial matters in controversy between it and the plaintiff contractor. We therefore conclude this reference to be a simple one directed by the court itself, and that the court below did not err in fully reviewing the master's findings of both law and fact. While this is true, there are some simple principles universally approved by appellate courts touching these reports, confirmed by the court below, which should not be overlooked when we come to review the case. These principles are very well set forth in Crawford v. Neal, 144 U. S. 585, at page 596, 12 Sup. Ct. 759, at page 762, 36 L. Ed. 552, where it is said:

"The cause was referred to a master to take testimony therein, 'and to report to this court his findings of fact and his conclusions of law thereon.' This he did, and the court, after a review of the evidence, concurred in his findings and conclusions. Clearly, then, they are to be taken as presumptively correct, and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consider-

ation of the evidence, the decree should stand." Citing Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Evans v. State Bank, 141 U. S. 107, 11 Sup. Ct. 855, 35 L. Ed. 654.

After the contractor ceased work in March, 1902, he procured from Elwood & Sons, the architects, a certificate to the effect that "he had performed and completed the contract," and that "he was entitled to the payment of seventeen thousand eight hundred and forty-one dollars, account of completion of contract." Counsel for the contractor earnestly insist that this certificate is "conclusive as to the character of the materials and workmanship and completion of the work under the contract in accordance with the plans and specifications," unless impeached for fraud or gross mistake implying bad faith. On the other hand, counsel for the hotel company as earnestly insist: First. That Elwood & Sons had no power whatever under the contract to make said certificate, and that it amounts to nothing more than an ex parte declaration of a third person, is not evidence, and entitled to no consideration. Second. That if, however, it should be held that they had the power under the contract to make such certificate, the same, not having been made by the contract conclusive, is not in fact conclusive and unimpeachable except for fraud, but, on the contrary, it at most is merely evidence and subject to be refuted by other evidence in the case. It must be conceded at once that the contract does not in express terms authorize these architects to issue such final certificate to the contractor to be conclusive and binding upon the hotel company. It must be admitted, however, that it constituted them not only the architects but also the superintending agents of the company, and that upon their estimates as such superintendents, made from time to time, payments, less 20 per cent. retained until completion of the work, were to be and were made by the company to the contractor. Under these circumstances, we think the legal principle governing has been enunciated by this court in Freygang et al. v. Vera Cruz & P. R. R. Co., 154 Fed. 640, 83 C. C. A. 414, where it was held that, a railroad company having accepted and paid estimates made by engineers constituted by the contract its supervising agents, final estimates were properly held to be prima facie evidence of the work done, and that settlement of the contractor's account could be properly based on them, subject to correction, contradiction, or impeachment for error, mistake, omission, or concealment. In effect, this is the second proposition contended for by the company's counsel, except that it goes a step farther and necessarily puts the burden of proof upon the hotel company to show that such certificate was untrue, and, if so, in what particulars. This rule is substantially affirmed in Mercantile Trust Co. v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811. The equity of this rule becomes the stronger in this case when it is remembered that the specifications authorized the company after three days' notice to the contractor to remove faulty work, and after unreasonable delay to take charge of and complete the work, after like notice, at his expense; that no such action was ever taken, but, on the contrary, the company not only paid estimates, but also took immediate possession of the property. With these legal principles determined to guide us, it is not difficult to decide

the contention of the hotel company in regard to the contract work and its performance. The superintendent's certificate was to the effect that the contract was substantially performed, the hotel company took possession, the master took the testimony, weighed it, and from it found a substantial compliance, and the court below, after a full review, affirmed the fact by its decree. The burden upon the hotel company was to show wherein there was not substantial compliance. It did show by evidence satisfactory to the master that there were proper deductions from the $17,841 certified as due by the architects of $3,-631.63, of which $956.71 was for bills assumed by the company for the contractor and $200 was for defective plastering, leaving $2,274.92, or less than 5 per cent. of the contract price, to be considered as representing the value of "uncompleted" work. Certainly the company was properly held entitled to credit for this sum, but not, on account thereof, to refuse payment of the balance of $14,209.37 on the ground that the contract was not substantially complied with, while at the same time having full possession, use, and enjoyment of the property. We, therefore, can see no such obvious error in the application of the law, or serious and important mistake in the consideration of the evidence, as would warrant us in reversing the finding of the master and the court below touching this contract work.

As to the claim of the hotel company based upon delay in the completion of the work and for which a penalty of $150 per day was fixed by the contract, without entering into an extended discussion of the facts, we deem it sufficient to say that it must be conceded that in the rebuilding of this hotel a number of contracts, independent of the plaintiff's, were let whereby a large amount of work was to be done and material furnished by the company by and through independent contractors. It must be conceded, also, that the entire completion by plaintiff of his contract work was dependent upon these other contracts or some of them being completed first. For these conditions the hotel company must be held responsible. The enforcement of penalties are not favored in equity, and they are so enforced only after the demandant therefor has shown that he himself has strictly complied on his part with all the contract requirements prerequisite to such enforcement. It is vigorously urged that the plaintiff contractor in this case, however, was responsible for a large number of the days of delay and the defendant company for only a few of the days thereof, and that the court, under such circumstances, should attempt to "apportion" such delay between the two and hold the contractor liable in penalty for those days that it, in its judgment, deems he may be chargeable with. This is just what the courts cannot, with any degree of certainty, do, and therefore refuse to do. It needs but a moment's practical consideration of common building operations to realize that a contractor may not complete the woodwork until the plastering is done; he may not in many instances complete the cement work until the plumbing is placed; he may not do the painting until the marble work is done. To perform his work, he is entitled to work upon an orderly and systematic plan. It could not be required of him to move his scaffolding, his tools and implements, and his workmen back and forth from one quarter to

another just as the other contractors might complete in one quarter a part of the heating, in another part the plumbing, and in still another the tile and marble work, in order that he should be free from the charge of delay. Courts cannot know of these conditions as they actually existed at the time, and the evidence would be very unsatisfactory, taken months after, that would attempt to set forth all such conditions. Therefore the courts have laid down a very salutary rule to the effect that they will not attempt to apportion such delays where the causes thereof have been mutual, but will refuse under such circumstances to enforce the penalty. The law on this matter is well laid down in a series of New York cases, such as Stewart v. Keteltas, 36 N. Y. 388, Heckmann v. Pinkney, 81 N. Y. 211, and Weeks v. Little, 89 N. Y. 566. Perhaps the best statement of it is found in the last-named case, from which we quote:

"The rule is well settled that, where the work to be performed by the builder cannot be performed until the other work provided to be done by the owner or his employés is finished, the failure by the latter to complete their work in season to enable the builder to end his within the time limited by the contract is a sufficient excuse for his delay beyond the agreed period of completion."

Again:

"It is true he (the referee) also finds that some work was delayed which was not affected by the delay of the defendant. We do not see how that fact alters the just result. To effect that would require us to assume what is not proved, and we cannot know that there would have been delay in the independent work if the dependent work had not been hindered. The contractor could gain nothing by haste and pressure in one direction so long as entire completion was delayed by his employers. We cannot divide and apportion the fault. It is enough that damages were payable upon a failure of entire completion, and that was rendered impossible by the defendant's act, and her executor cannot recover for a failure which she made inevitable. But for that we cannot say that there would have been any delay beyond the contract time."

There was therefore no error in the decree of the court below in denying the hotel company's claim for the penalty for delays.

This brings us to a consideration of the claim of the contractor for extras. This claim was finally presented by him for $19,677, although first presented as for $16,777. The master allowed for these extras $13,884.14, and the court below approved his finding. The large sum thus allowed for these extras, proportionate to the original contract price, necessarily arouses surprise and doubt as to their integrity. In this case we are not inclined to consider as carrying much weight the approval of this claim by the architects, as such approval was made, it seems to us, hastily, to say the least, and with little consideration. The temptation on the part of contractors to recoup losses on improvident contracts by claims of this kind is frequently present and strong. It is therefore the clear duty of courts to carefully scrutinize such demands and allow them only upon clear and satisfactory evidence sustaining them. In this case this claim for extras is very earnestly contested for these reasons: (1) Because the extras claimed for were not such in fact, but were covered by the contract and specifications. (2) Because the architects had no authority, under the contract or other-

wise, to order such extras, and their action in doing so was never ratified by the hotel company. (3) Because the architects ordered the alleged extras verbally and not in writing, specifying the cost and compensation therefor as provided to be done by the contract before the company could be held liable. (4) Because the prices charged and allowed were excessive. In opposition to these contentions, plaintiff's counsel insist, in effect, (1) that the work charged for was clearly extra, part of it admitted to be so by the company itself, and all clearly shown to be so by an overwhelming weight of evidence. (2) That this defendant was a corporation capable of acting only by and through its agents, and these architects were constituted by this corporation its supervising agents—superintendents—and by the terms of the contract and specifications recognized as such, whose decision as architects was to be final as to all interpretations of plans, details, and specifications, and who were to be, as superintendents, the judges of all work and material, with power to require all faulty work or material to be removed at contractor's expense, to make estimates upon which payments from time to time in the progress of the work were to be made, to approve all subcontracts, and "remove" unsatisfactory workmen; in short, that they were in effect made the officers of the corporation, so far as the rebuilding of this hotel was concerned, with general power to act for it in the premises, and not with limited powers as contended now by counsel for it. In support of this proposition, it is contended, (a) the company even now admits its liability for some of the extra work done at Elwood & Sons' instance; (b) that Jeffress, the vice president, who, it seems to be conceded, was the resident officer highest in authority in the practical management of the affairs of the company, told the plaintiff contractor in effect that the architects would have entire control of the work and he only intended to pay the bills; and (c) therefore, if these architects did not have in fact plenary power in the premises, the contractor was led by the officer who did have it to believe that they did have it, and under such conditions the company is now estopped from denial, especially as it is in possession and having the full benefit, use, and enjoyment of the hotel property with these extras attached thereto and part thereof. (3) Such general power being shown to be thus in the architects, so far as the contractor's relations with the company is concerned, it necessarily follows (a) that he had right to order extra work done, (b) that he could waive the requirement of the contract requiring these extras to be set forth in written orders fixing cost and price, and (c) that he did generally order such extras in writing, except in a very few instances in which the requirement was clearly waived.

Without entering into extended discussion of the evidence, which is voluminous upon this question of extras, we deem it sufficient to say that the master and the court below held substantially that the contractor's contentions were right, and we are not prepared to say, after careful review of the decree, report, and the evidence, they have erred either as to the law or the facts. We are convinced, first, that the hotel company cannot now deny the general authority of its agent, Elwood & Sons, to order and contract for these extras after having allowed them

to be done upon such orders, without protest at the time when done, and being now in the possession and enjoyment of them; second, that under such circumstances it has become immaterial whether the technical requirements of the contract as to these extras being ordered in writing was strictly carried out or not, because it must be held to have been waived; third, that, after careful examination of the evidence, the items allowed as extras were in fact extras, and not "changes" under the terms of the contract; and, finally, that the compensation allowed therefor was reasonable. We think the case in this particular branch of it to be clearly ruled by the principles laid down by this court in The Sappho, 94 Fed. 545, 36 C. C. A. 395, and that there is no error in the decree complained of as regards the contractor's claim for extra work done and material furnished.

The only remaining question to be considered arises upon the appeal of Arents to the allowance to Meredith & Cocke and James L. Harman, attorneys, of $1,184.19, being 15 per cent. of the debt due to Arents, assignee of the Richmond Woodworking Company, for $7,894.60. This allowance was made upon petition heard, without notice or process served, on the day it was filed, and the allowance was made as part of the fees due to these attorneys for Brumbaugh, upon the theory that Brumbaugh was acting in practical effect as trustee for his subcontractors, and that, having "created" or secured the fund for all, they should all contribute to the expense, by way of attorney's fees, incurred by him in doing so.

This assumption, in the opinion of the writer, is unsound, for at least two reasons:

First. It is not to be forgotten that every one of these subcontractors' debts were personal ones of Brumbaugh himself. He, in fact, was not only personally but primarily liable for them, because he owed them by distinct contracts existing between him and such subcontractors. It was his clear legal and moral duty to pay these debts, wholly independent of whether the hotel company paid him or not. All of his property, real, personal, and choses in action, including this claim of his against the hotel company, were, by law, made liable for the payment of these debts. It was his moral and legal obligation to put forth every effort to collect this claim against the hotel company, and pay it over or cause it to be paid over to these creditors of his. To say that, in employing counsel and discharging this moral and legal obligation, he must be paid by his creditors his costs and expenses, would establish the new doctrine that if A. owes B. and B. owes C., in such case, if B. can collect his debt from A. by instituting suit against him, he can, when he pays his debt to C., make the latter pay out of it the costs of the collection by him of his debt against A.! A., by reason of B's insolvency, can allow such a claim if he wants to do so, but if he refuses there would seem to be no law that can compel him to thus reward his debtor for paying his debt in full, as the law demands he should do. The position of his attorneys in the litigation can be no better than his own. They agreed with him, and him alone, to do the work; they can only claim through him, and, if he is not entitled to this indemnity they are not. The case would have been entirely different if one of the sub-

contractors on behalf of all the others standing upon the same footing had instituted the suit against Brumbaugh, the insolvent, but primarily bound creditor, and the hotel company, secondarily bound for the purpose of requiring the latter to pay its contract obligation to Brumbaugh to all the subcontractors alike. In such case the ground would be common between these subcontractors. The relation of debtor and creditor would not have existed between them, but they would have in common been creditors of Brumbaugh's, interested in the creation of a fund independent of him and against another party. In such case, if the fund secured was more than sufficient to pay all Brumbaugh's creditors, leaving a balance coming to him, such balance would have been liable to the reasonable costs and attorney's fees incurred by the creditor instituting the suit and incurring such costs, and if no such balance was found, then the fund going to the subcontractors would have been liable therefor. This is the full extent to which the courts have gone in such cases as Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, Central Railroad v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915, and Harrison v. Perea, 168 U. S. 311, 18 Sup. Ct. 129, 42 L. Ed. 478, relied on by appellees. In the Greenough Case, Vose, a large bondholder, brought his suit against the Florida Railroad Company, and "created" or secured, at large expense in costs and fees, a fund of which he and his fellow bondholders derived the benefit. His fellow bondholders were required to contribute to his costs incurred in "creating" or securing the fund. In the Pettus Case certain creditors brought suit on behalf of themselves and all other creditors of the railroad to establish a lien upon its property. The suit was successful, and the attorneys bringing it asked and were decreed costs and fees incurred from the common fund secured for the benefit of all the creditors alike. In the Perea Case suit was brought by Perea, as administrator of Perea Second, deceased, against Harrison, charging him with having wrongfully appropriated the estate of decedent. He was successful in establishing a liability upon Harrison on account of the estate of his decedent so appropriated, of which Harrison was found to be entitled, as administrator of his deceased wife, to thirteen twenty-sixths, and also to three other twenty-sixths as purchaser of some of the other heirs. Perea, administrator of decedent, claimed indemnity for costs and fees paid in securing the fund, and was allowed such claim. The principle running through these cases is clear and simple, but we have yet to find any case where a debtor can bring suit to recover a fund due to himself, but inuring to the benefit of his creditors, and be allowed his costs and attorney's fees for the collection as against his creditors having debts existing prior to the incurring of such costs and fees by him.

Second. Another reason arises in this case why, in the judgment of the writer, no such allowance should be made. The mechanic's lien law of Virginia provides that a subcontractor may, when he takes such subcontract from the contractor, give notice to the owner of the existence and character of such contract and the probable amount to eventually become due under such subcontract. Having done this any time within 30 days after he has filled his subcontract, he may then furnish the owner and contractor his itemized account, verified by affidavit, which

must be disputed within 10 days by such contractor, or otherwise, as this law has been construed by the Supreme Court of Virginia, the subcontractor acquires at least three securities for the amount of his account so rendered: (a) A preference of payment over all other subcontractors out of any amount due from the owner to the contractor upon the contract price; (b) a personal liability upon the part of the owner to him for his debt, provided, at the time he gave to the owner the notice of his contract, there was due or to come due from such owner to the contractor a sum sufficient to pay his claim; and (c) a lien upon the property of the owner into which, under the contract, the labor or material of such subcontractor entered, subject likewise to the above proviso. The woodworking company complied fully with these legal requirements. It gave the notice to the hotel company, recorded its lien, and filed its account with both Brumbaugh and the company, and it was undisputed. After receiving the notice in August, 1901, the hotel company recognized its liability for and paid to Brumbaugh, upon the contract price, more than $28,000. Arents, assignee, became entitled to the three securities above set forth. Under such circumstances, even if the suit had been brought by another creditor of Brumbaugh's by, say, another subcontractor of his, to establish and secure the fund from the hotel company, it could not have inured to the benefit of the woodworking company or Arents, its assignee. It would have succeeded only in establishing the fund due from the hotel company, out of which this claim was already by law entitled to payment first in full. Such fund could only be enforced out of the hotel company's property, as against which this claim was fixed by law as a first lien. Such suit could not go further, but the rights of Arents did go further without it, for he had the hotel company also personally responsible for his debt. See Code Va. 1887, §§ 2479, 2480 (Code 1904, pp. 1241, 1242); Schrieber v. Bank, 99 Va. 257, 38 S. E. 134; N. & W. R. R. Co. v. Howison, 81 Va. 125; 1 Va. Law Reg. 27, and note; 13 Va. Law J. 153; Taylor v. Netherwood, 91 Va. 88, 20 S. E. 888.

With these views, however, the two associated judges do not agree. On the contrary, they hold that Brumbaugh being insolvent and nonresident of the state, these attorneys instituting this suit and establishing a disputed debt good against the solvent hotel company, inuring solely to the benefit of these creditors of his, would be entitled to an attorney's lien upon the fund if it were payable to Brumbaugh himself for their services, and that it can well and equitably be held to exist as against the fund itself, although going to his creditors, the subcontractors. That the fact that Arents, assignee, has other and additional security for his debt does not affect the fact that payment of it here is to be made out of this fund, which alone is involved in this case, and therefore he is entitled to no greater immunity from this attorney's lien upon the fund as a whole than are any of the other creditor subcontractors. That, in effect, they are none of them entitled to the fund as a whole until the costs of its creation are paid, and these costs include attorney fees, so secured by the attorney's well-recognized common-law lien. That, while the decree may in words be an allowance out of each subcontractor's ascertained debt of 15 per cent. in payment of these attorney's fees, it is, nevertheless, in practical effect an enforce-

ment of the attorney's lien upon the whole fund as such, and in no way affects Arents and the other subcontractors' independent rights to enforce against Brumbaugh personally their demand for the balance of their original debts against him not fully paid by reason of the allowances of these fees or for other reasons, which independent rights are not affected by this decree of distribution of this particular fund. That, finally, neither the woodworking company nor Arents, its assignee, could have derived any benefit of this fund without instituting and prosecuting a similar suit to this, involving practically the same labor and expense as this one, if Brumbaugh or some other one of the subcontractors had not done so. That had it been instituted by another subcontractor it would seem to be clear from the decisions that all would have had to contribute, and, under the peculiar circumstances of Brumbaugh's insolvency and inability to pay counsel for this necessary work, it is not perceived why equity should not look to the practical result regardless of the instrumentality by which it is obtained.

It follows that these views of the majority must prevail, and the decree of the court below in all respects is affirmed.