[Civ. No. 20849. First Dist., Div. Two. Dec. 16, 1963.]

THE AETNA CASUALTY & SURETY COMPANY, Plaintiff and Respondent, v. BOARD OF TRUSTEES OF RINCON VALLEY UNION SCHOOL DISTRICT et al., Defendants and Appellants.

Richard M. Ramsey, County Counsel, and Robert A. Rehberg, Deputy County Counsel, for Defendants and Appellants.

Spridgen, Moskowitz, Barrett & Achor and William G. Luckhardt for Plaintiff and Respondent.

TAYLOR, J.—Appellants, the Rincon Valley Union School District of Sonoma County and its Board of Trustees (hereinafter referred to as the District), contracted with Frank S. Glover, doing business as Glover Construction Company (hereinafter referred to as the contractor), for the construction of the Spring Creek Elementary School. The agreement established August 29, 1958, as the completion date and contained a clause stipulating $50 liquidated damages for each day the project remained incomplete. The architect granted an extension to October 3, 1958. The work was not completed within the extended time. In fact, the certificate of completion was not filed until February 5, 1959. The District withheld as liquidated damages $6,250 ($50 a day for 125 days) and the contractor brought this action to recover this sum plus interest. Subsequently, the parties stipulated to an amendment of the complaint to substitute as the real party in interest The Aetna Casualty & Surety Company, subrogee on the contractor's faithful performance bond.

The contract provided that changes could be made only after formal change orders had been executed as provided under the rules and regulations of the State Division of Architecture.[1] On September 3, 1958, the contractor was advised by the architect of change order 3B in connection with a redwood drop inlet and was instructed not to proceed until notice of approval of the change was processed through the Department of Finance. On September 29, 1958, the contractor was notified of change order 3C relating to the installation of a rip-rap retaining wall on the bank of Spring Creek. Both

---

[1]These rules and regulations provide that a contractor may not proceed until the approval by the local school board, the State Bureau of School Planning, the State Division of Architecture and the State Division of Finance. Although there is a provision for verbal approval of minor changes, there is no evidence to indicate that such was given. The architect testified that as a general practice, work was often done while the change order was being processed through the various state agencies.

of these change orders, as well as No. 4A[2] concerning certain
street improvements requested by the City of Santa Rosa,
were approved by the Department of Finance on December
26, 1958, and the contractor notified thereof on January 6,
1959.

One of the District's architects testified that had he known
of the time the contractor required to finish the rip-rap re-
taining wall, he would have granted a further extension. An-
other of the District's architects testified that none of the
change orders would have justified a further extension of
time "Because ... the scope and nature of the work would
have permitted the work to have continued concurrently with
the original contract without increasing the overall length of
time required." The court found and there was testimony
that much of the work of the building remained undone by
the extended completion date. There was also testimony that
with due diligence, the architects could have gotten the in-
formation on the drop inlet to the contractor before Sep-
tember 29, 1958, and submitted the change order to the De-
partment of Finance before November 18, 1959. District arch-
itect Felciano admitted that had he used diligence, he would
have gotten the information to the contractor in time for him
to have put the inlet in prior to October 3, 1958, the extended
completion date. There was testimony that the drop inlet was
an integral part of the project, that completion of the con-
tract could not have been certified until this work had been
completed and that as a result of the timing of change order
3B, the contractor would have been unable to complete the
project by October 3, 1958, through no fault of his own.

The trial court concluded in its memorandum opinion that
while the contractor was *dilatory* and had not substantially
performed on the extended completion date (October 3,
1958), the District's conduct made it impossible for the con-
tractor to perform the terms of the agreement and thus com-
plete the project until January 6, 1959, when the change

---

[2]Only these items of the change orders are in issue here. Change order
No. 1 concerned the extension of the completion date to October 3
because of bad weather; change order No. 2, the modification of the
arcade beams as a result of the contractor's error; 3A, the dishwasher
manifold and valves and booster heater in the multi-purpose room; 3D,
the substitution of metal soap dispensers for the plastic ones initially
specified. There is also no dispute as to the total amount due under the
contract ($286,406.50; the original agreement was for $283,290), the
balance represents the $3,116.50 due because of change orders 3 and 4,
including the small sums for incidental items.

orders were finally processed. The court found accordingly and awarded judgment to the contractor for $4,750[3] together with interest at the rate of 7 per cent from October 3, 1958, thus allowing the District to retain liquidated damages totaling $1,500 for the 30 days between January 6, 1959, and February 5, 1959, when the project was finally completed. The District appeals from this judgment.

The issues are whether there was sufficient evidence for the trial court to find that the District rendered performance by the extended completion date impossible, and if so, whether the court could apportion liquidated damages.

■ The facts indicated above clearly establish that while the contractor was behind in the overall job on October 3, 1958, the District, by its own conduct in processing the change orders, rendered performance impossible within the extended time agreed upon by the parties. The District contends that since there was no evidence that it caused any delay in the *ultimate completion of the entire project*, it should be allowed liquidated damages. We do not agree. The crucial date is that stipulated for completion (*Gogo* v. *Los Angeles etc. Flood Control Dist.*, 45 Cal.App.2d 334 [114 P.2d 65], citing *Champlain Construction Co.* v. *O'Brien*, 117 F. 271; *Jefferson Hotel Co.* v. *Brumbaugh*, 168 F. 867 [94 C.C.A. 279]; *King Iron Bridge & Mfg. Co.* v. *City of St. Louis*, 43 F. 768 [10 L.R.A. 826]). As stated in *Gogo, supra*: "By its own act defendant rendered performance *within the time limited by the contract impossible* and has therefore lost its right to claim the liquidated damages provided in the contract." (Italics ours.) (P. 344.) ■ Liquidated damages are a penalty not favored in equity and should be enforced only after he who seeks to enforce them has shown that *he has strictly complied with the contractual requisite to such enforcement (Jefferson Hotel Co.* v. *Brumbaugh, supra*; Civ. Code, §§ 1670, 1671).

■ The trial court erred in the apportionment of liquidated damages. In the first place, a proper apportionment would necessarily have to allow the contractor a reasonable time beyond the change order notification on January 6, 1959, within which to complete the work called for. However, the cases clearly hold against any apportionment of liquidat-

---

[3]The parties agree that in view of a contract provision giving the school district authority to withhold 10 per cent of the contract price until 35 days after acceptance of the work, the interest should run from March 12, 1959 (35 days after February 5, 1959).

ed damages. In *Gogo, supra,* the court said: "The correct rule is that where such delays are occasioned by the mutual fault of the parties the court will not attempt to apportion them but will refuse to enforce the provision for liquidated damages. *(Jefferson Hotel Co.* v. *Brumbaugh,* 168 F. 867 [94 C.C.A. 279] ; *Champlain Construction Co.* v. *O'Brien* (Vt.) 117 F. 271.) "It is stated in the *Champlain* case at page 277: "There is no way for summing up the defaults of each and apportioning the damages to them, but the whole must be allowed or none; and, as all cannot be, none must be."

█ The District, of course, retains its right to show actual damages sustained by the contractor's subsequent delays. As stated in *New York Continental Jewell Filtration Co.* v. *United States,* 55 Ct. Cl. 288: "It is well settled that in cases where delays have been caused by both parties to a contract, and the *completion of the contract has thereby been extended beyond the time fixed,* the obligation for liquidated damages is annulled, and it can not be revived, and any *recovery for subsequent delays must be for actual loss proved to have been sustained.*" (Italics ours.) ( See also *United States* v. *United Engineering & Contracting Co.,* 234 U.S. 236 [34 S.Ct. 843, 58 L.Ed. 1294], and *Sinnott* v. *Schumacher,* 45 Cal.App. 46, 52-53 [187 P. 105]).

█ The District contends that the contractor has waived any defense it may have had against liquidated damages by its failure to make written application for extensions of time as required by the agreement.[4] The Supreme Court recently held in *Peter Kiewit Sons' Co.* v. *Pasadena City Junior College Dist.,* 59 Cal.2d 241 [28 Cal.Rptr. 714, 379 P.2d 18], that noncompliance with a provision requiring an application for an extension of time is not a proper basis for holding a contractor liable in liquidated damages for late completion caused by the owner's conduct.

The judgment is reversed.

Shoemaker, P. J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 5, 1964.

---

[4]The contract provided that if the contractor considered itself entitled to an extension of time for any cause, it must submit in writing to the architect an application for such extension. Extensions were to be granted only for delays resulting from causes beyond the control of the contractor.