187 N.J. Super. 30 (1982)
453 A.2d 559
UTICA MUTUAL INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF-APPELLANT,
v.
S. LEONARD DIDONATO, AS DIRECTOR, DIVISION OF BUILDING AND CONSTRUCTION, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY; DEFENDANT AND THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1982.
Decided November 1, 1982.
*33 Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.
Francis X. Crahay argued the cause for appellant (Giordano, Halleran & Crahay, attorneys; Francis X. Crahay and John S. Hoyt, III on the brief).
Eugene J. Sullivan, Assistant Attorney General, argued the cause for the respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Eugene J. Sullivan on the brief).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
Utica Mutual Insurance Company (Utica) instituted this action against the State of New Jersey alleging that Colino Electrical Contractors (Colino) entered into a contract with the State whereby Colino agreed to perform certain electrical work required for the completion of the construction of the Richard Stockton State College for the consideration of $688,000, adjusted to $693,870.62. Pursuant to N.J.S.A. 2A:44-143 et seq., on June 20, 1973 Colino, with Utica as surety, executed a performance and completion bond in the form required for state contracts, conditioned upon completion of the Colino contract and the payment of laborers and materialmen involved. Colino defaulted on the contract on or about December 16, 1974 and Utica was compelled to complete performance of the Colino contract. Utica further alleges that agents and employees of the State had notice of "business improprieties and defaults of Colino" regarding the major services to be performed by Colino. Despite this notice and knowledge, the State, instead of notifying *34 Utica, reduced the retainages on Colino's payments from 10% to 3% and intentionally, recklessly and in bad faith disbursed payments to Colino for work that was not completed, causing Utica to suffer damages.
Defendant denied liability and in an amended answer asserted a counterclaim seeking liquidated damages for Utica's failure to complete the contract within the time allowed. At the conclusion of a lengthy, nonjury trial a judgment was entered May 6, 1981 dismissing plaintiff's complaint and awarding liquidated damages on the counterclaim in favor of the State of New Jersey and against Utica for $173,720 plus interest of $44,003. Plaintiff appeals.
Colino was one of the several prime contractors (one of whom was referred to as the general contractor) on this project which involved the construction of an academic and recreational complex consisting of eight wings which included classrooms, a gymnasium, a pool, two gallerys (b-level walkways), mechanical facilities and a theater.
Under the general conditions of the contract the general contractor was to be responsible for the formulation of a progress schedule, referred to as a Critical Path Method (CPM). This is a document which integrates the various phases of the work to be performed by all contractors and coordinates these phases into a sequential time outline setting forth the order of the work to be done. See Dobson v. Rutgers, the State University, 157 N.J. Super. 357, 367, n. 3 (Law Div. 1978), aff'd sub nom. Broadway Maintenance Corp. v. Rutgers, 180 N.J. Super. 350 (App.Div. 1981), aff'd 90 N.J. 253 (1982) (providing a detailed description of the function and usefulness of the CPM). The general contractor was required to formulate the CPM by the time the first requisition was issued. It did not do so and the contractors worked on the project for about seven months without the benefit of a CPM. The work schedule, when finally prepared, did not include the theater and, as prepared, did not conform to the original plans for a CPM as incorporated in the *35 specifications which called for periodic printouts and updating. The CPM schedule for the theater was not prepared until January 29, 1975.
The adjusted completion date under the contract was Dec. 25, 1974.
The State paid Colino as the work progressed. The procedure used was for Colino to prepare a unit schedule breakdown (USB) showing Colino's price estimate for labor performed and materials delivered to the job site. After the requisition was checked and verified it was cleared for payment subject to retainage. The general conditions of the contract provided for the State to retain 10% of a progress payment until the work was completed and accepted, subject to the proviso that after the work was 50% completed, if it was determined that the contractor's performance and progress was satisfactory, remaining partial payments could be made in full for work subsequently completed.
A series of problems with Colino's work developed around August of 1974 and continued until Colino's contract was terminated on December 16, 1974. The problems included Colino's failure to pay suppliers, its failure to have materials delivered to the construction site and its failure to have sufficient workmen on the job. On December 16, 1974 Utica was notified by the State of the termination of Colino's contract and Utica notified the State that it elected to finish the contract. Utica thereafter engaged a consultant to evaluate the project and he reported:
1. There was a serious discrepancy in the amount of money paid to Colino and the actual amount of work performed. He reported the State paid 84% of the contract price to Colino while only 50% of the work had been performed.
2. Colino had removed tools and materials from the job site.
3. There was a reduction in retainage from 10% to 3%.
4. It would take six to seven months to complete the electrical work, and
5. There would be a deficit after application of the balance of the contract price in the possession of the State of approximately $221,879.
A job progress list prepared by the architect and attached to the minutes of a meeting held at the job site on January 17, 1975 showed the percentage of completion of the electrical work on all segments of the project except the theatre as follows:

*36
 JOB PROGRESS
 % complete as of 1/17/75
---------------------------------------------------------------------------
ACTIVITY 41.0 I J K L Gall. E Gall. W
---------------------------------------------------------------------------
Electrical
 a. Primary Service UG vaults and duct 100%
 b. Feeder conduit 100 100 100 100 100 100 100
 c. Panels - lighting 100 100 100 20 100 - -
 d. Panels - power 100 100 100 20 100 - -
 e. Branch circuits, light 95 100 100 0 100 100 100
 f. Branch circuits, power 100 100 100 50 100 100 100
 g. Wire; power and light 95 100 100 0 100 100 100
 h. Fire alarm-feeders 100 100 100 95 100 100 100
 i. Fire alarm-branch 95 100 100 50 100 100 100
 j. Ceiling drops to SS-4 - - 100 - 100 - -
 k. ATC thermostat wiring 10 100 100 10 100 100 100
 l. RMZ power wiring 100 100 0 100 100 100
 m. RMZ control wiring
 (readout) 100 100 20 100 100 100

A separate portion of the list showed the percentage of completion of the electrical work as to the M wing (theater) as follows:

 5. Electrical
 a. Primary service 90
 b. Main sub-station 75
 c. Feeder conduit/wire 90
 d. Panels, power/light 60
 e. Branch circuits/power 55
 f. Branch circuits/light 55
 g. Fire alarm 45
 h. Sound system (empty) 40

By August 24, 1975 the progress reports showed the electrical work was 100% complete in most categories and 98 or 99% in the remaining categories. The Director of the New Jersey Division of Buildings and Construction testified that there was substantial completion of all elements of construction, including the theater, "around June of 1975."
*37 Utica expended approximately $350,000 to complete the project. The State paid Utica approximately $120,000, representing the balance of monies remaining under Colino's contract with the State at the time of Colino's default. Utica sought in this lawsuit to recover from the State the balance of the sums expended for completion.
In support of its claim for reimbursement Utica argues that certain actions by the State require that it be discharged from its obligation under the surety bond. The allegations upon which Utica primarily relies are:
1. The State knowingly paid for work not done and materials not supplied, contrary to the terms of the contract.
2. The State improperly reduced the amount of retainage provided by the contract and
3. The State failed to notify Utica of the improprieties and default of Colino.
The trial judge ruled that a surety is entitled to a reasonable adherence to the contract by the owner as it pertains especially to the payment provision. He stated that in order to recover "the plaintiff must show an unreasonable departure from the terms of the contract and the extent of the prejudice suffered as a result thereof."
The judge, in a lengthy letter opinion, examined the proofs and concluded that plaintiff had failed to prove:
(1) bad faith on the part of the State;
(2) the making of payments to Colino for work performed and materials furnished which would constitute an unreasonable departure from the terms of the contract and
(3) the making of payments to Colino which violated the retainage provision of the contract.
Utica does not disagree with the ruling of the trial judge that there was imposed upon it a duty to show an unreasonable departure from the terms of the contract by the State and prejudice to Utica in order to recover. It strenuously argues, *38 however, that the facts produced at trial clearly met that burden.
We have considered the arguments and briefs submitted and have examined the voluminous record of the trial and conclude that there is sufficient credible evidence in the record to support the findings of fact and the conclusions of the trial judge and we will not disturb them. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974).
The judgment dismissing plaintiff's complaint with prejudice is affirmed.

Liquidated Damages
The State in a second amended answer asserted a counterclaim seeking liquidated damages under the contract because of the failure of Utica to complete Colino's work within the time allowed by the contract. The provision in the contract on this issue is as follows:
21. TIME OF COMPLETION  DELAY  LIQUIDATED DAMAGES
A. In the event of the failure of the Contractor to complete the said work within the time stated in his proposal, the Contractor shall be liable to the State in the sum of twenty-five ($25.00) dollars per day, or the sum equal to 1/20th of one percent of the total consideration provided for under this contract, per day, whichever is greater for each and every day that the said work shall be and remain incomplete, which said sum shall be treated as liquidated damages and not a penalty...
........
... provided further, that the Contractor shall not be charged with liquidated damages or any excess cost when the delay in the completion of the work is due:
(a) ...
(b) To unforeseeable cause beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the State, acts of another Contractor in the performance of a contract with the State which acts are contrary to the terms of such contract, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and severe weather; and
(c) To any delays of subcontractors or suppliers occasioned by any of the causes specified in subsections (a) and (b) of this article....
As stated, the adjusted completion date of the contract was December 25, 1974. The State contended that the actual completion *39 date by Utica was May 14, 1976. On that date Utica returned a punch list stating that they had completed their obligation under the contract, and the State asserts that it is willing to accept that date as the completion date.
In a 24-page letter opinion the trial judge carefully and thoroughly examined the facts and contractual obligations discussed in the first part of this opinion. At the end of that opinion he disposed of the claim for liquidated damages in a few short paragraphs occupying less than a page, as follows:
The State is seeking these liquidated damages in its counter claim. The plaintiff offered no defense to the counter claim but only alleged in its trial brief that the delays were caused by the State. No evidence of this allegation was presented and in fact plaintiff's exhibit P-14, its original estimate, discloses plaintiff's belief that there was no liquidated damage clause in the contract.
The court finds that the State is entitled to recover on the counter claim.
The facts are not in dispute. The final completion date, as amended, was December 25, 1974. Plaintiff completed the contract on May 14, 1976. One twentieth of one percent of the original contract amounts to $344.00 and this is in excess of $25.00. The delay for a period of 505 days and at $344.00 per day, results in liquidated damages in the sum of $173,720.00.
Defendant also seeks interest, and the same is granted from May 16, 1976 to July 18, 1979 (the last day of the trial). This represents 3 1/6 years at 8% per year or $25.33% interest. Twenty-five and thirty-three one hundreds [sic] percent of $173,720 equals $44,003.00.
In its challenge to the assessment of liquidated damages plaintiff contends:
1. Liquidated damages were improperly asserted against it since, under the terms of the contract, Utica was not responsible to pay damages for delays caused by other contractors or by the State. Utica asserts there was evidence and stipulations that all prime contractors were responsible for delays.
2. The liquidated damages assessed bore no reasonable relationship to any harm suffered by the State.
3. The payment by the State to Colino of 85% of the contract price reflected the fact that the work was substantially completed at the time of default, December 16, 1974, or, in the alternative, that the work was substantially completed long before May 14, 1976 and damages should not have been assessed past the date of substantial completion.
*40 4. The trial judge improperly interpreted the contract in assessing damages: the one-twentieth of one percent should not be computed on the total contract price, but only on the total remaining consideration.
The State responds to these arguments by pointing out that these issues were never raised in the pleadings or at the time of trial and contends that they are improperly raised for the first time on this appeal. While these issues were not adequately framed by the parties in their pleadings, we consider them basic to the relief sought and we will discuss them.
The issue confronting us is whether the trial judge properly assessed liquidated damages with interest thereon against plaintiff. In interpreting and applying a liquidated damage clause, more than a mechanical multiplication of the number of days delay by the perceived contract amount is required. There must be a preliminary inquiry to determine whether the contract clause provides for the imposition of a penalty or the assessment of liquidated damages. The rule was stated in the following terms in Westmount Country Club v. Kameny, 82 N.J. Super. 200 (App.Div. 1964), as follows:
An agreement made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimate. 1 Restatement, Contracts, § 339, p. 552 (1932). And see Suburban Gas Co. v. Mollica, supra [131 N.J.L. 61]; 218-220 Market St. Corp. v. Krich-Radisco, Inc., 124 N.J.L. 302, 305 (E. & A. 1939). However, if it appears that the parties have provided for an excessive sum in a case where the real damages are certain or readily reducible to certainty by proof, then the sum fixed is deemed a penalty and is not enforceable. Borden Co., Pioneer Ice Cream Division v. Manley, 127 N.J.L. 461, 463 (Sup.Ct. 1942).
Upon a consideration of the whole agreement, if it is doubtful whether the provision for payment is intended as a penalty or liquidated damages, it will be construed as a penalty, because the law favors mere indemnity. Monmouth Park Asso., [v. Wallis Iron Works] supra, 55 N.J.L., [132] at page 141 [at 206]
The record is silent on whether the sum of $344 a day is a "reasonable forecast of just compensation for the harm caused by the delay." Ibid; see, also 218-220 Market St. Corp. v. *41 Krich-Radisco, Inc. 124 N.J.L. 302, 305 (E & A 1939). We are not informed when the State occupied the theater building. We do know that the Director testified that there was substantial completion of the entire project, including the theater, around June of 1975, but we are not informed whether the entire project was occupied or used for the September 1975 term of the college and, if not, was that nonuse the result of delay on the part of Utica or the State  or other contractors or a combination thereof? The trial judge made no findings on the relevant basic inquiries relating to the validity of the liquidated damage clause and the reasonableness of the damages claimed by the State for the delay. In short, we are not informed of the magnitude of the harm suffered by the State. If the liquidated damages provided by the contract are not a reasonable forecast, it would amount to a penalty and be unenforceable. Barr and Sons, Inc. v. Cherry Hill Center, Inc., 90 N.J. Super. 358, 377 (App.Div. 1966).
The Colino contract contained a provision for the grant of an extension of time for completion. Where such a clause appears in a contract providing liquidated damages for delay, "authorities permit the contractee to recover liquidated damages but only to the extent that the delay is not caused by the contractee himself." Buckley & Co., Inc. v. State, 140 N.J. Super. 289, 314 (Law Div. 1975), and see cases cited therein.
Here there is no dispute as to the fact of delay but the parties dispute its cause and duration. The record contains evidence of delay in the furnishing of a CPM. We do not know what effect, if any, that omission had on the total delay in completion. There was also proof and stipulations of delay due to other contractors. This is significant, for the contract imposes liquidated damages only for delays not due to the acts of the State or of other contractors.
The trial judge made no findings as to whether or not a portion of the delay was due to delay on the part of the State or another contractor. Furthermore, the State made no attempt to *42 prove its entitlement to liquidated damages other than to rely on an alleged late completion date as its right to damages. The trial judge found "[t]he plaintiff offered no defense to the counterclaim but only alleged in its trial brief that the delays were caused by the State. No evidence on this allegation was presented...." We assume this refers to a failure on the part of Utica to produce proof on that issue. This suggests that the trial judge assumed the burden of proof was on Utica to prove that the State caused or contributed to the delays in order to avoid the imposition of liquidated damages. We disagree that that is so, both as a general rule and under the facts of this case. In General Ins. Co. of America v. Commerce Hyatt House, 5 Cal. App.3d 460, 85 Cal. Rptr. 317 (D.Ct.App. 1970), the general rule was stated to be as follows:
It is well established that where the owners seek liquidated damages pursuant to the provisions of a contract, they must show that they have strictly complied with all requisites to the enforcement of that contractual provision. An owner whose acts have contributed substantially to the delayed performance of a construction contract may not recover liquidated damages on the basis of such delay. "Liquidated damages are a penalty not favored in equity and should be enforced only after he who seeks to enforce them has shown that he has strictly complied with the contractual requisite to such enforcement [citations]." (Aetna Cas., etc., Co. v. Bd. of Trustees, 223 Cal. App.2d 337, 340, 35 Cal. Rptr. 765, 767.) "The correct rule is that where such delays are occasioned by the mutual fault of the parties the court will not attempt to apportion them but will refuse to enforce the provision for liquidated damages."
See, also, Kent v. United States, 343 F.2d 349, 351 (2 Cir.1965); Wunderlich Contracting Co. v. United States, 351 F.2d 956, 968, 173 Ct.Cl. 180 (1965).
We are not aware of any New Jersey cases that have discussed this precise issue, but we are satisfied these out-of-state cases properly place the burden of proof upon the one seeking damages.
We are unable to ascertain from the record or from the opinion of the trial judge exactly what standard he applied in determining liability for and assessing the amount of liquidated damages. We are of the opinion that, given the specific contract language involved here, the burden in the first instance is *43 on the State to prove a valid liquidated damage clause and its entitlement to recover damages which are reasonable, considering the magnitude of the harm caused to the State.

Interest
Without comment, the trial judge granted the State's request for interest upon the liquidated damages. Interest was awarded in the amount of $44,003 for the period May 16, 1976 to the last day of trial, July 18, 1979. We hold it was error to do so. The parties by contract agreed upon the measure of damages for delay. That agreement did not include the imposition of interest. Where the parties have agreed upon the precise method by which damages shall be computed and assessed, the court is bound by their contract.
The State, arguing in support of the determination by the trial judge in assessing interest, cites Jardine Estates v. Donna Brook Corp., 42 N.J. Super. 332 (App.Div. 1956). That case did not involve a contract with a liquidated damage clause. As to interest, the court there held that it should not be allowed where damages are unliquidated and not capable of ascertainment by mere computation or where a serious and substantial controversy exists as to the amount due under a contract or where the issue of performance was justifiably and seriously in dispute. Id. at 341. The court stated that interest would be allowed in accordance with principles of equity in order to accomplish justice in each particular case. We are in complete agreement with that approach in the usual case. However, where, as here, the parties have agreed upon the measure of liquidated damages, the rule relating to the assessment of interest was stated in Hoagland v. Segur, 38 N.J.L. 230 (Sup.Ct. 1876), as follows:
In cases where the contract is for the payment of money, or the performance of a collateral act, and the sum named is strictly a penalty  the actual debt or damages only being recoverable  a recovery for the full amount thereof is sometimes allowed, in the shape of interest or damages, in excess of the sum named as the penalty.
........

*44 ... But where the sum named is not a penalty, but is liquidated damages, which is recoverable, not as the representative of an actual debt, or as the measure of actual compensation, but as the damages fixed by the parties to be recovered on a breach, the verdict must be for that precise sum. The precedents are uniformly to that effect.
The application of this principle to the present case is eminently proper, in view of the language of the parties. They agree that the damages to be recovered in any action shall be the sum of $10,000. A jury cannot assess damages when the parties themselves have fixed them. Mayne on Damages 170. [at 238-239]
While that case is indeed an old one, the principle appears not to have been questioned in any reported case and we are persuaded it is the proper rule.

Summary
The judgment dismissing plaintiff's complaint is affirmed.
The judgment awarding liquidated damages with interest to the State on the counterclaim is reversed.
The counterclaim is remanded to the trial court for further proceedings consistent with this opinion. The parties may apply to the trial court for leave to amend their pleadings and for leave to present additional proofs should they desire to do so and such application shall be viewed indulgently.
We do not retain jurisdiction.